Regina Louis and Myrtle Witte, Appellants, v.
Checker Taxi Company and John Hoppe, Appel-
lees.

Gen. No. 42,338.

Opinion filed March 10, 1943.

Rehearing denied March 29, 1943.

ALEXANDER J. REIFF, of Chicago, for appellants; JOHN F. POWER, of Chicago, of counsel.

JESMER & JESMER, of Chicago, for certain appellee; JULIUS JESMER, of Chicago, of counsel.

DELMAR J. HILL, of Chicago, for certain other appellee; OSWELL G. TREADWAY, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On Friday, March 29, 1940, between 1:15 and 1:30 a. m., at North avenue and Halsted street, Chicago, Regina Louis and Myrtle Witte stepped into a taxicab of the Checker Taxi Company, and directed the driver, Samuel Morici, Jr., to convey them home. In taking them home he was required to drive in a northerly direction on Halsted street. North avenue runs in an easterly and westerly direction and comes in at 1600 north, according to the Chicago numbering system. Halsted street runs in a northerly and southerly direction and on it are laid tracks for the operation of north and southbound trolley cars. Willow street is an east and west street and intersects Halsted street at 1800 north. Between North avenue and Willow street a short street named Concord street runs east but not west from Halsted street at number 1632 north. The cab proceeded in a northerly direction on Halsted street. Mrs. Louis sat on the left hand side and Mrs. Witte on the right hand side of the cab. The driver, of course, sat in the driver's seat. At approximately the same time Everett Hoppe, with the permission of his father, was driving the latter's 1935 Plymouth automobile in an easterly direction on Willow street toward its intersection with Halsted street. There were six people in this car. Everett Hoppe's mother, Mrs. Frances Hoppe, was sitting on the right hand side of the front seat; Everett's girl friend Helen

Mandik was sitting between Everett and his mother; and Anthony Waldibillig, Anthony Groh and Mary Mandus were sitting on the rear seat. While the cars were moving into and across the intersection of Halsted and Willow streets there was an impact. When the cars were brought to a stop, the Hoppe car, which had been proceeding in an easterly direction, was on the north side of Willow street between the east curb of Halsted street and the building line, facing in a northeasterly direction, and the cab was facing east on the south side of Willow street between the east curb of Halsted street and the building line. At the time the cars stopped the front part of the cab was opposite the right front door and about four feet south of the Hoppe automobile. The occupants of the cab were injured and were taken to St. Joseph's Hospital and from there to their homes. They were subsequently treated by physicians. In a complaint filed in the superior court of Cook county Regina Louis and Myrtle Witte sought judgment against the Checker Taxi Company and John Hoppe. A trial before the court and a jury resulted in verdicts finding the defendants not guilty. A motion by plaintiffs for a new trial was overruled and judgment entered against plaintiffs, to reverse which this appeal is prosecuted.

Plaintiffs argue that the judgment is manifestly against the weight of the evidence. The corporate defendant urges that points made but not argued are considered to have been waived; that the burden is on the party alleging error to show it affirmatively by the record; that a judgment not manifestly against the weight of the evidence will not be disturbed; and that the court will not search the record to find reasons for reversal. The individual defendant maintains that the judgment is correct as to it; that the plaintiffs have failed to point out any error; that errors assigned but not argued will not be considered; that plaintiffs' contention that "one or the other or both

of the defendants was responsible for the accident" furnishes no ground for reversal; that the happening of an accident raises no presumption of negligence on the part of a defendant; and that plaintiffs cannot complain of the form of the verdict. Under the heading of "Errors Relied On For Reversal," plaintiffs set out six grounds for reversal. However, they argue only one ground, namely, that the judgment is manifestly against the weight of the evidence. We agree with the defendants that the points not argued are considered to have been waived. We also agree that the burden is on the plaintiffs to show affirmatively by the record that the judgment is manifestly against the weight of the evidence and that this court is not required to search the record to find reasons for reversing the judgment. We are also in agreement that the happening of an accident raises no presumption of negligence on the part of a defendant. The court submitted 11 forms of verdict covering all possible findings that the jury might make by reason of the fact that there were two plaintiffs and two defendants. Plaintiffs do not argue that there was any impropriety in the manner in which the forms of verdict were submitted to the jury.

Everett Hoppe, called as an adverse witness, testified that it had been drizzling slightly; that he did not have the windshield wiper on; that it was not raining "at the moment"; that he stopped his car before crossing Halsted street; that he looked both ways; that his car stopped not more than three seconds; that he could not state exactly, "but I paused"; that there was no automobile in front of him; that he was traveling east toward Halsted street and saw a motor vehicle to his right, which was to the south of Willow street; that this automobile was going north, and that the distance from Willow street to North avenue is two blocks. He thought that the car going north was a little bit less than half of the distance away; that

"the right front side of my car came into collision with the cab and there were also some marks on the back bumper and the right front fender. There was a slight indentation on the back, at the time of the collision the left front bumper and fender of the cab met on my car, mostly the right front door, the right front fender and there was a slight mark on the right back fender and the front radiator was not hit at all." He had been driving for about seven years. He did not look at the cab with the idea of noting the speed. He looked at the cab "with the idea of noting the distance and the safety of getting across the street." He did not look to watch the cab as he (witness) was crossing the street. He "did not think it was necessary." He could not tell the speed of the cab immediately before striking his car. He could calculate the speed of the cab by the force with which it hit his car and by the distance his car was moved after the accident. After the collision his car was on the north side of Willow street between the building line and the curb on the east side of Halsted street and facing in a northeasterly direction. Witness' car was east of Halsted street on Willow street and on the northern half of the street, the front part of the car being on the east side of the building line. The east sidewalk of Halsted street from the curb to the building line is about 14 or 15 feet. The hood and part of the front of the car was on the east side of the building line. The cab was on the south side of Willow street. The cab was turned around the corner facing east on Willow street about half way between the east curb of Halsted street and the building line. The front of the cab was just opposite the crushed in front door of witness' car after it came to a stop, about four feet south of witness' car. Witness' car was ahead of the cab. Witness did not see the cab immediately before the collision. He estimated that from North avenue to Willow street is "possibly 800 feet or something like

that." He testified that the vehicle which he later identified as the cab, was about 400 feet from Willow street when he stopped his car completely at the intersection. He also testified that at that time the cab was about three quarters of a block away, perhaps 300 feet; that he might have had his car rolling very slowly as he approached Halsted street; that he "came to a stop practically and perhaps rolled a few inches, had time to look up and down the street and then seeing nothing within a dangerous distance I put the car in first again and proceeded across the street. I saw headlights." In answer to the question: "Then you did not see the automobile that you say you saw there at the south, or the Checker Cab, with which your automobile collided until after the impact?", he answered: "That is correct." The distance between the place where witness' car stopped prior to the impact and the east curb of Halsted street is about 25 feet. He was pretty sure the impact occurred in Willow street. Witness testified that his automobile was moving in an easterly direction at the time of the impact at about 10 or 12 miles an hour. Automobiles were parked on both sides of Halsted street south of Willow street. After the collision witness got out of his automobile and saw the cab, which had the dim lights on.

Samuel Morici, Jr., a witness called by the Checker Taxi Company, testified that after plaintiffs got into his cab he drove north on Halsted street; that "it was dry weather"; that they told him to drive carefully; that his cab was straddling the east rail of the street car tracks; that as he approached Willow street he noticed parked cars; that he was going between 15 and 20 miles an hour; that he did not go any faster. The Hoppe car was being driven east on Willow street, about 20 feet west of Halsted street when witness first noticed it, and was traveling at a speed of 35 to 40 miles an hour. In answer to a question as to where

the cab was at the time Morici noticed the other automobile, he answered, "On Halsted Street." Asked, "Where, with reference to Willow?", he answered, "Willow, just turning." Witness further testified that he swung his cab to the right and the driver of the other car "hit his right fender with my left fender and wheel"; that he (witness) stopped his cab in about two or three feet and the driver of the other car stopped in about 20 feet; that he (witness) stopped at the point of impact. The witness directed that plaintiffs be taken to St. Joseph's Hospital in another cab. The witness' cab had a green light in front and two other green lights in addition to the dim lights. All were lighted. When he saw the car he tried to turn out of the way at a speed of 15 to 20 miles an hour. The cab had a glass partition separating the driver's seat from the passengers, and it is necessary for the driver to turn around and open this partition in order to open or close a window in the rear. He testified that he did not lower or raise a window of the cab.

Mrs. Regina Louis, who will be 48 years of age on March 29, 1943, testified that the windows of the cab were open; that it was drafty; that she started to close a window; that the cab was then about half a block north of North avenue; that as the cab approached Willow street the driver tried to assist her with one hand; that he had one hand in back and the other on the wheel and "by the time he got his hand back we had collided already." Witness stated that the window on the right hand side was open. She testified that the driver of the cab was going at a "pretty good speed"; that when the cab came to Willow street there was a collision; that witness was just looking ahead; that "we both swerved off of Willow and the other car was going east." She fell forward and hurt her right foot, ankle, shoulder, arm and back of her neck. Mrs. Witte fell over Mrs. Louis' leg and was thrown to the bottom of the cab. Her head struck the front seat

and she (Mrs. Witte) seemed to be knocked out. Witness did not see the other car before the collision "until we came close to hitting." The cars wound up on Willow street. Witness stated that "both cars swerved, one car had gone east on Willow street and the cab had to turn off with him on Willow"; that she could not open the door because Mrs. Witte was laying on top of her, and that she attracted the driver's attention by knocking on the cab door. She denied having any conversation with the cab driver about how to drive. When she first noticed the east bound car it was crossing the tracks. Mrs. Myrtle Witte, 57 years of age at the time of the trial, testified that the cab man was driving at a normal speed; that she was knocked to the bottom of the cab and rendered unconscious; that she was taken to the hospital; that she was sick to her stomach, nervous and upset. She testified about her injuries, the treatment given to her and alleged loss of earnings due to her injuries.

Helen Mandik, the girl friend of Everett Hoppe, testified that she was riding on the front seat between Hoppe and his mother; that it was raining at the time of the accident, "just a slight drizzle, sort of misty. Everett was going east on Willow; and when he came to Halsted street he stopped the car and looked both ways. I glanced right and left and south, did not see anything, no traffic could be seen down Halsted five or six houses. When we stopped I could not see any car coming; the stop did not take long; it did not take five minutes, just long enough to look both ways. He shifted and started on his way. He started slowly, in the middle of the street, I noticed this cab. Our car was in the middle of the car tracks, the cab was about three houses or so down the street coming out at a pretty fast rate of speed. The cab was going about thirty-five, that is my best judgment. The cab did not have bright lights, they were dim. At the time I saw the cab our car was going about ten miles. I

glanced again as we started to cross the street and the cab was coming, then it struck us; our car was just a little past the east crosswalk when it was struck; it jolted and then skidded a little to the north curb. Saw the two ladies at the hospital, the smallest woman, Mrs. Witte, was having her knee fixed at the hospital. Mr. Hoppe did not cross the intersection at thirty-five to forty miles an hour.'' She further testified that the cab had its lights on and that she could see it was a cab. Defendant Hoppe introduced the United States weather report, which showed that at 1:00 a. m. on March 29, 1940 the temperature was 54 degrees, and at 2:00 a. m. 56 degrees. On the 28th between 11:22 and 11:27 p. m. there was rain, and on the 29th from 12:37 to 12:49 a. m. there was rain. The exhibit also shows the following as to these hours: ''Water less than .005 of an inch, a trace.'' Mrs. Hoppe, wife of the individual defendant and mother of Everett Hoppe, testified that she did not see the cab with which the automobile in which she was riding, collided; that when her son got to the intersection he stopped ''to look both ways and started slowly across Halsted street. Everett did not drive across the intersection at a speed of thirty-five or forty miles an hour.'' In view of the conclusion reached, it will be unnecessary to consider the medical testimony.

We agree with defendants that the burden was upon plaintiffs to prove their case by a preponderance of the evidence, and that this is not a *res ipsa loquitur* case. The driver of the car proceeding easterly on Willow street testified that it was not raining at the time of the occurrence. He is contradicted in this by Miss Mandik, who testified that there was a slight drizzle at the time. He stopped his car momentarily at Halsted street, or at least slowed it down so that it was rolling slowly. He looked up and down the street and saw the automobile which later was identified as the cab, approaching on Halsted street from

the south. At the time he saw the cab (which he did not know at that time was a cab) it was three quarters of a block south of Willow street, or 300 or 400 feet. He did not look to observe the cab while it was approaching the intersection and while he was proceeding across Halsted street. He did not think it was necessary to look. His car was moving in an easterly direction at the time of the impact at a speed of 10 or 12 miles an hour. He saw the headlights on the cab when it was three quarters of a block away and there was no traffic on Halsted street between the approaching cab and Willow street. Apparently, Hoppe was not aware of the imminence of a collision previous to the impact. He did not testify as to the speed of the cab. It would be difficult for him to so testify in view of his statement that he did not watch the cab as he was crossing the street, and that he did not think it was necessary to do so. Miss Mandik corroborates him in his statement that he stopped at Halsted street. She testified that when the front part of the car in which she was riding was at the west rail of the southbound street car tracks, the cab was about three houses or so down the street coming at a pretty fast rate of speed; that the cab was coming at about 35 miles an hour; that the car in which she was riding was traveling about 10 miles an hour; and that the car was struck by the cab when "it was a little past the east crosswalk." Mrs. Hoppe corroborated her son in his testimony that he stopped at the intersection and said that he did not drive across it at a speed of 35 or 40 miles an hour. Morici, the cab driver, stated that the partition between himself and the passengers was closed; that he was not requested, nor did he attempt to open a rear window with one hand while driving with the other hand; that plaintiffs requested him to drive carefully; that he was traveling between 15 and 20 miles an hour; that when he saw the eastbound car it was on Willow street 20 feet west of Hal-

sted street; and that it was traveling at a speed of 35 or 40 miles an hour. In order to avoid a collision he swung to the right, or in an easterly direction, and stopped in two or three feet. Evidence on behalf of John Hoppe tended to show that the car being driven by his son stopped at the intersection and then proceeded at a speed of 10 or 12 miles an hour, while the cab was being driven at a speed of 35 to 40 miles an hour. It was contended by the corporate defendant that the cab driver was driving north on Halsted street at a speed of 15 or 20 miles an hour, and that the Hoppe car was traveling east on Willow street at a speed of 30 to 35 miles an hour. On a retrial it will be for the jury to say whether plaintiffs were in the exercise of due care and caution at and immediately before the time of the collision. The fact that one of the plaintiffs requested the cab driver to close the window certainly would not show that either plaintiff failed to exercise due care. It appears to us that 12 reasonable men and women would find it difficult to say that the plaintiffs were guilty of contributory negligence. If the jury found defendants not guilty on the basis that plaintiffs were guilty of contributory negligence, we are satisfied that such finding is contrary to the manifest weight of the evidence.

Everett Hoppe saw the cab approaching the intersection. At that time the cab was three quarters of a block away. According to Hoppe's testimony, the car he was driving was traveling at a speed of from 10 to 12 miles an hour. According to the testimony of Miss Mandik, the cab was traveling "at a pretty fast rate of speed," or about 35 miles an hour. Although Hoppe had driven a car for seven years, he did not testify as to the speed at which the vehicle from the south was approaching. Hoppe testified that he did not watch the cab as he (Hoppe) was driving across Halsted street and that he did not think it was necessary. It is difficult to understand how a jury

could find Hoppe not guilty under the evidence presented. Morici testified that when he saw the Hoppe car it was moving east on Willow street about 20 feet west of Halsted street at a speed of 35 or 40 miles an hour, and that the cab was proceeding at a speed of 15 or 20 miles an hour. As the Hoppe car continued to proceed in an easterly direction at this speed, the cab driver did not slacken the speed of his cab, and to avoid a more serious collision it was necessary for him to swerve to the east. If he had his cab under control and was observing the car approaching from the west, the jury would have the right to say that he could have stopped his cab before the impact. There is no testimony that either driver sounded his horn, although that point is not raised. The corporate defendant owed to the plaintiffs a duty to exercise the highest degree of care and caution consistent with the mode of conveyance and the practical operation of the cab, and it was the duty of the individual defendant acting through his son, to exercise ordinary care in the operation of his automobile. We find that the judgment is manifestly against the weight of the evidence as to each defendant. Accordingly, the judgment of the superior court of Cook county is reversed and the cause remanded with directions to allow plaintiffs' motion for a new trial and for further proceedings.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.