Gay Brown, as Administrator of the Estate of Ruth Mildred Brown, deceased, and Walter Brown, as Administrator of the Estate of Velma Faye Brown, deceased, Plaintiffs-Appellants, v. Roy Ray Boyles, as Administrator of the Estate of Stella Boyles, deceased, et al., Defendants. Leland Mc-Combs, and Bartlow Brothers, Inc., an Illinois Corporation, Defendants-Appellees.

Gen. No. 10,289.

Third District.

September 22, 1960.

James N. Keefe and Howard L. Snowden, of Quincy, for appellants.

Delbert Loos, of Quincy, for appellees.

REYNOLDS, J.

This action under the Wrongful Death Act was brought by the plaintiffs as administrators of the estates of their deceased spouses for losses incurred, due to the death of their respective spouses resulting from a collision between an automobile driven by one Stella Boyles and a truck driven by one Leland McCombs, an employee of Bartlow Brothers, Inc.

The collision occurred at approximately 5:15 o'clock P. M., on Illinois State Highway No. 61, a short distance west of Big Neck, in Adams County, Illinois. Stella Boyles was driving and as passengers for hire, Ruth Mildred Brown and Velma Faye Brown were riding with her, going from their place of employment, Dennis Chicken Products Company, at Augusta, Illinois, to their homes near Mendon, Illinois. From their positions after the accident, it appears that Ruth Mildred Brown was riding in the left rear seat and Velma Faye Brown in the right rear seat. The Boyles car was traveling west and the truck driven by McCombs was traveling east on the highway, an 18 foot

wide concrete slab. The visibility was in the twilight zone, half dusky, and it was snowing. The highway was snow covered and slippery. For some distance both east and west of the point of collision the highway was level and straight, so that both Mrs. Boyles and McCombs could see the other approaching. From the testimony of one witness, Jack Chinn, who was traveling behind the McCombs truck, but who did not see the actual collision, both the Boyles car and the truck had their lights on. In the collision Mrs. Boyles, the driver of the car, and Mrs. Gay Brown and Mrs. Walter Brown were killed.

Other than McCombs and the three women who were killed, no one actually saw the accident. The witness Chinn was following the McCombs truck at a distance of about one-half mile, but did not see the collision. He saw the lights of the approaching car and the rear lights of the truck. Other witnesses testified as to what they found when they arrived at the scene of the accident. Three state police officers testified as to the condition of the roads, the positions of the cars when they arrived and one testified as to what speed the truck driver McCombs said he was driving. A number of witnesses testified to the careful habits of the deceased women.

Gay Brown, as Administrator of the Estate of Ruth Mildred Brown, Deceased, and Walter Brown, as Administrator of the Estate of Velma Faye Brown, Deceased, brought suit under the Wrongful Death Act against Leland McCombs and Bartlow Brothers, Inc., his employer, and against Roy Ray Boyles, Administrator of the Estate of Stella Boyles, Deceased. Roy Ray Boyles, as administrator counterclaimed against Leland McCombs and Bartlow Brothers, Inc., for loss due to the death of Stella Boyles, Deceased. Bartlow Brothers, Inc., counterclaimed against the Estate of Stella Boyles, Deceased for damages to its truck. Pri-

116

or to the trial the plaintiffs were paid $7,000.00 each on behalf of Roy Ray Boyles, as Administrator of the Estate of Stella Boyles, Deceased. The trial was upon the claim of the plaintiffs against McCombs and Bartlow Brothers, Inc., the counterclaim of Bartlow Brothers, Inc., against the Estate of Stella Boyles, Deceased, and the counterclaim of Roy Ray Boyles, as Administrator.

The case was heard before a jury and the jury returned verdicts finding the defendants Leland McCombs and Bartlow Brothers, Inc., not guilty as to the plaintiffs and not guilty as to the counter-claimant Roy Ray Boyles, as administrator, and finding Roy Ray Boyles, administrator, not guilty as to the counterclaim of Bartlow Brothers, Inc. Judgment was entered upon the verdicts and from that judgment plaintiffs appeal to this court.

In their appeal, plaintiffs raise only one point, namely that the trial court erred in denying the plaintiffs' motion for a new trial, since the verdict of the jury was manifestly against the weight of the evidence. Since no other errors were assigned, the sole question before this court is whether the verdict was against the manifest weight of the evidence. In passing on the question raised, it will be necessary to review the testimony at the trial.

Because there were no eyewitnesses, a number of witnesses testified as to the careful habits of the deceased women. These witnesses all testified that the three women were all of careful habits, both in their home life and as drivers or riders of automobiles.

Three Illinois State Highway police officers testified that they were on duty and when they received the call they went to the scene of the accident. They testified that the roads were snow covered and slippery, and that it was hazardous for travel. When they arrived the truck was partly cross-wise the road,

117

with the rear end projecting into the west bound lane and the front end at or near the Boyles automobile, which was on the south side of the highway. Trooper Fudala talked to McCombs and testified McCombs said he was driving forty miles an hour just before the accident. This officer found a deep cut or skid mark on the highway, beginning in the west bound lane about fifteen feet east of the point of collision, about five feet long, then cutting sharply across the road in a southerly direction, extending into the east bound lane about one and one half feet. Fudala said the mark was compatible if the driver in the west bound lane had been forced to apply the brakes. The ambulance driver, and others testified they were driving on the road and each were driving at different speeds, ranging from 20–25 to 30–35. One witness Harriet Robertson met the truck as she was driving west on Highway No. 61 and while she said she thought the truck was going faster than it should for the road conditions, she did not estimate the speed, and said that when she met it it was in its proper lane and was not swaying or swerving.

Mrs. Violet Phillips and Mrs. Eva McMann were the first to arrive at the accident scene. Mrs. Phillips was driving 30–35 miles per hour. Mrs. McMann got out and Mrs. Phillips drove to Big Neck to report the accident, then drove back.

Inez Quisenberry met the Boyles car east of Big Neck and estimated its speed at that time at 20–25 miles per hour. She testified the roads were very slick and visibility dusky.

Jack Chinn, driving behind the truck, estimated his speed at 40–45 miles per hour and testified he came over the hill and saw the truck with two vehicles between him and the truck and lights approaching from the east. He believed he was gaining on the truck. He could distinguish the two headlights of the car ap-

118

proaching, but did not see them swerve. He saw a flash of light off to the right, then the rear lights on the truck swerve to the southeast and then back toward him to the west.

Gene Rees, a witness for the defendants, was behind the truck driving about 35 miles per hour. He did not see the collision.

Mrs. McMann, riding with Mrs. Phillips, estimated the speed of the Phillips car at 30–35 miles per hour. She did not see the truck until they came upon it cross-wise in the road. She said no one passed them from Loraine Junction to the scene of the wreck. She said McCombs came up to their car and told them the Boyles car had skidded in front of him and he had no time to avoid the collision.

In considering this evidence certain facts seem to be unquestioned. The place of the collision was a state highway with a concrete slab 18 feet in width, and at that point the highway was level and ran east and west. It was twilight, dusky and snowing and the highways were covered with snow and ice. Driving on the highway was hazardous and people using the highway were driving at speeds from 20 to 40 miles per hour. The driver of the car Stella Boyles was a careful person and a careful driver. Other than the persons involved there were no eyewitnesses. There was a skid mark or something resembling a skid mark about 15 feet east of the point of collision, four or five feet long in the west bound lane that curved into the east bound lane about one and one half feet. The truck after the collision was cross-ways of the road, with the rear end projecting into the west bound lane, and the car was in or near a ditch on the south side. The truck front was against the car.

█ Other facts do not seem so clear. Plaintiffs' Exhibits 7 and 8, which were pictures taken at the scene of the wreck, would tend to show that the right

119

front of the car collided with the right front of the truck. There was no debris to show just where the actual collision occurred. There is no positive evidence as to the speed of either vehicle. An examination of the pictures of the two vehicles after the collision would tend to establish that the greatest damage to the automobile was on the right front and the greatest damage to the truck was on the right front. If, on account of the condition of the road, Mrs. Boyles lost control of her car and swerved sharply to the left, in front of the truck, that would account for the point of greatest damage to each vehicle. If, McCombs was over the center line in the west bound lane and Mrs. Boyles was in her proper lane, the force of the collision would tend to turn the cars counter-clockwise and it is improbable that the two vehicles would have come to rest on the south side of the highway. If, McCombs had lost control of his truck and swerved sharply to the left, into the Boyles car, the force of the collision would still be counter-clockwise and the heavier vehicle would tend to push or force the lighter vehicle to the north of the highway. If, McCombs had lost control of his truck and swerved sharply into the west bound lane in front of Mrs. Boyles, and she, in an attempt to avoid the collision had cut to the south, into the east bound lane, but didn't quite make it, then the movement of the vehicles after the impact could have been clockwise and might have resulted in the position of the vehicles when movement ceased. While the pictures introduced into evidence show heavy damage to both vehicles, it does not appear that the collision was head-on. All these conjectures present questions of fact for a jury to pass upon and this court in considering the questions does not attempt to say what actually happened, but what the jury may have taken into consideration in determining what happened. Sometimes the mute testimony of pictures such as

Plaintiffs' Exhibits 7 and 8, tell a more graphic story than the oral testimony of witnesses. But, as we have said before, these conjectures as to what actually happened are speculative and there is no testimony in the record that shows what did take place, immediately before and at the time of the accident.

The plaintiffs contend that the verdicts are inconsistent and that the only way the verdicts can be reconciled is that the jury must have decided that the drivers of each car were guilty of contributory negligence, or that none of the parties were guilty of negligence and that the accident was the result of an inevitable accident. We agree with the plaintiffs that there is nothing in the evidence to show any negligence on the part of Velma Faye Brown and Ruth Mildred Brown. While the plaintiffs do not say so, it would be hard on the basis of the testimony in this case to say that Stella Boyles was negligent. But, the plaintiffs contend that the testimony of the speed of McCombs truck is evidence of negligence on his part. McCombs was quoted by Trooper Fudala as saying he was traveling about forty miles per hour just before the accident. While this testimony is not disputed, it is not conclusive of negligence on the part of McCombs. Others using the road were driving 30–35 miles per hour. While some were more cautious and drove only 20–25 or 25–30 miles per hour, this would depend upon each driver and while it is admitted that the road was icy and slippery, this fact, considered as admitted, does not necessarily prove negligence on the part of McCombs. The truck with wider tires, more weight and longer would be safer to drive at forty miles per hour than an automobile at thirty-five. We do not agree with the conclusion that McCombs was not in his proper lane at the time of the collision. It is true that after the collision that the truck was cross-wise on the road with the rear end projecting over the center

121

line and into the west bound lane, but there is no evidence that at the time of the collision the truck was in the wrong lane.

The plaintiffs admit that the mark of some kind on the highway, just east of the scene of the accident which curved from the west bound lane southwardly into the east bound lane is evidence which might show that there was negligence on the part of Mrs. Boyles which contributed to cause the collision. But, they argue, that this is further evidence that the collision was not an inevitable accident, and that the verdicts are repugnant. Since neither this court, the trial court nor the litigants are permitted to inquire into the reasons upon which a jury reaches a verdict, this reasoning of the plaintiffs is also speculative and conjectural.

■■ The plaintiffs cite the case of Louis v. Checker Taxi Co., 318 Ill. App. 71, 47 N.E.2d 351, but a reading of that case fails to disclose any law that helps the position of the plaintiffs. While the plaintiffs in their argument contend that the jury must have reasoned that there was no negligence and that the collision was an inevitable accident, or that the jury must have considered both drivers guilty of contributory negligence, and that the verdicts are inconsistent, they do not raise those points in their appeal. Their appeal is based solely upon the one point, namely, that the verdict of the jury was manifestly against the weight of the evidence. They can only be arguing against the verdict as to them, since Bartlow Brothers, Inc. and Roy Ray Boyles, did not appeal the verdict against their counterclaims. And the court in the Louis v. Checker Taxi Co. case, at page 74 holds that points raised but not argued are waived. This would be equally true, as to points argued but not raised. Here, the sole point raised was that the verdict was

against the manifest weight of the evidence. The burden of showing this is upon the plaintiffs and the reviewing court is not required to search the record to find reasons for reversing the judgment. It is true in the Louis v. Checker Taxi Co. case that the court found that the judgment was against the manifest weight of the evidence, but each case must rest upon its own facts, and that case lays down no rule of law that applies, except in a general way to this case. The court in that case, page 74, said: "We are also in agreement that the happening of an accident raises no presumption of negligence on the part of a defendant." We cannot find in the case where the court held, as stated by the plaintiffs, that the court held in that case it was against the weight of the evidence to find neither party guilty of negligence. The court did say, that it found that the judgment was manifestly against the weight of the evidence as to each defendant.

The case of Buehler v. White, 337 Ill. App. 18, 85 N.E.2d 203, was a case where an elderly man, on a level road, with dry pavement, ran into the rear of a car with lights showing to the rear and killed three people. The jury returned a verdict for the defendant and the Appellate Court reversed it on the ground that it was against the manifest weight of the evidence. There is very little analogy between that case and the one here.

Plaintiffs cite the case of Schneiderman v. Interstate Transit Lines, Inc. 331 Ill. App 143, 72 N.E.2d 705. In that case, the court held that it could not say upon the record that the verdict of the jury and the judgment of the court were against the manifest weight of the evidence. In reaching its decision, the court discussed the duty of the reviewing court in passing on the question as to whether a verdict is against the manifest weight of the evidence. On page 147 of the opinion, the court said: " ' "There are many

things which a jury observes on the trial in such case that do not appear from the printed record—the appearance of the respective witnesses, their manner of testifying and a great many other circumstances. They are in a much better position in such case to determine the truth of the matter in controversy than a court of review." . . . . Under the law we cannot disturb the verdict of the jury unless it is clearly against the manifest weight of the evidence. *Manifest means clearly evident, clear, plain, indisputable.'* (Italics ours.)" The language of that case seems to this court to be a clear and plain rule for disposition of this case. If this court can say that the verdict of the jury finding the defendants not guilty, was clearly and indisputably against the manifest weight of the evidence, then this court has a duty to reverse and remand for a new trial. On the other hand, if this court cannot say that the verdict is clearly and indisputably against the manifest weight of the evidence, it is the duty of the court to affirm the verdict and judgment thereon.

██ In the first instance, it must be conceded that there is a burden upon the plaintiff in any case charging negligence, to prove the negligence of the defendant by the greater weight or preponderance of the evidence. The mere happening of an accident does not of itself raise any presumption of negligence on the part of a defendant. Louis v. Checker Taxi Co., 318 Ill. App. 71, 47 N.E.2d 351. In the case of Keller v. Menconi, 7 Ill.App.2d 250, 129 N.E.2d 341, an instruction was given instructing the jury that the happening of an accident in itself raised no presumption of negligence on the part of the defendant. The court in that case said to be literally correct, the instruction should have stated that it raised no presumption of negligence on the part of either plaintiff or defendant, but that the giving of the instruction was not reversible error.

124

The cases of Bradley v. Thomas M. Madden Co., 333 Ill. App. 153, 76 N.E.2d 797, and Wallis v. Villanti, 2 Ill.App.2d 446, 120 N.E.2d 76, were cases concerning accidents upon icy and slippery roads. In the Wallis v. Villanti case it was held that negligence is a positive wrong and the burden of proving it is upon the party averring it, not upon the defendant to disprove it. And the court in that case, later held the question of negligence to be a question of fact to be determined by the jury.

■ On the basis of the evidence in this case it would have been difficult for the jury to have found either of the drivers of the vehicles involved, guilty of negligence. Certainly, there is no evidence of negligence on the part of the two women who were riding with the driver of the automobile. There is little if any evidence that the driver of the truck, McCombs was guilty of negligence, unless it be based upon speed alone and we do not regard that as conclusive, in the light of testimony of other persons using the highway at the same time that they were driving at 30–35 miles per hour. Unless much importance is attached to the skid mark or marks on the highway just east of the point of impact, there is little or no evidence that Stella Boyles was negligent. Applying the rule that the plaintiffs and the counterclaimants each had the burden of proving negligence of the other party, it would seem that each failed to discharge such burden. The trial jury did not have the clearly evident, clear, plain, indisputable evidence of negligence to find either of the drivers guilty. The evidence produced, either by testimony or exhibits presented questions of fact for the jury to decide. The admitted speed of the truck, the evidence of the mark in the pavement, the pictures of the car and truck after the accident, all presented matters to the jury upon which to base their

■■■■■■■

decision. This court will not disturb the verdict of a jury upon a question of fact, unless clearly and palpably erroneous or against the manifest weight of the evidence. This principle has been enunciated so many times that citation of authorities seems unnecessary. Lurie v. Newhall, 333 Ill. App. 173, 76 N.E.2d 813; Fisher v. Illinois T. R. Co., 350 Ill. App. 555, 113 N.E.2d 344; Wallis v. Villanti, 2 Ill.App.2d 446, 120 N.E.2d 76.

Since in the opinion of this court there is little evidence of negligence on the part of any one involved and certainly not such clear, indisputable evidence that would make the verdict of the jury against the manifest weight of the evidence, the judgment will be affirmed.

Affirmed.

CARROLL, P. J. and ROETH, J., concur.