(No. 5627— )

JEFFREY A. LIND, Claimant *vs.* STATE OF ILLINOIS, and DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Respondents.

*Opinion filed April 18, 1977.*

MORTON S. GOLDFINE and JOHN C. NEWELL, JR., Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

SPIVACK, J.

Claimant, Jeffrey A. Lind, by his mother and next friend, seeks to recover from the State of Illinois a sum of $25,000.00 for personal injuries allegedly sustained as a result of Respondent's negligence, whereby Claimant was severely and permanently injured.

The undisputed facts are as follows: Jeffrey Lind, on August 3, 1966, was seventeen years of age and a full-time employee in Havana, Illinois; on the day of the accident, he had been working in Vermont, Illinois. That morning he had ridden to work as a passenger on the motorcycle of Roger Lynn Mason. As they rode to work in a westerly direction on Route 136, Claimant noticed barricades on the south side of the road. Lind and Mason left work about 5:00 p.m. and stopped at Ipave, Mason's cousin's home, visiting there for about three hours. They did not eat there, although Jack Russell drank "less than" a can of beer and Lind and Mason drank some "pop." They were not in a hurry to return home.

After leaving Ipave on the way home, Lind again rode as a passenger on Mason's motorcycle. They were

following Jack Russell, who was also operating a motor-cycle, both machines proceeding in an easterly direction on Route 136. Although there is some inconsistency regarding the actual time of the occurrence, all three agreed that the night was clear and dry and was "pitch black."

Route 136 had been torn up for repair work. Around and along the construction site were barricades. Prior to reaching the construction, Lind testified that he saw a "Construction Ahead" sign, then another sign which read "One Lane Road Ahead." Both motorcycles were traveling at a speed of 40 to 50 miles per hour and their headlights were on. The two motorcycles successfully avoided many barricades by riding in the left lane of the highway. They swung back to the right side of the road as they approached a hill or rise to avoid any chance of collision with an approaching car, although there was no oncoming traffic. At the top of the hill was a bar-ricade with three working lights. They went back to the right side of the road because they thought that the construction had ended. However, a short distance from the barricade at the top of the hill was another bar-ricade which was apparently lying on its side. Russell avoided this one, but Mason's motorcycle hit it. This collision badly broke Lind's leg. Although it was promptly set and is now healed, Lind was totally in-capacitated for a period of eight months and still com-plains of intermittent pains, a slight limp, and loss of normal use.

Lind, due to his injury, was not able to take notice of the surroundings after the accident. His witnesses, Mason and Russell, testified as to the appearance of the barricades. They stated that the barricade hit by Mason was down before he approached it. They were not quite sure whether the barricade hit was the last of the

barricades but stated that there were two or three barricades down and not all equipped with blinking lights. The ones that had lights were, by Mason's and Russell's testimony, not working. Russell stated that as Mason went to get aid for Lind, Russell and an unknown state trooper set the barricades upright and worked to get the flashes working. This state trooper was not brought in as a witness.

A witness for the Respondent, Fay Shawgo, an employee of the State, testified that he was called from home on August 3, 1966, to get some barricades righted and operational on Route 136. He went out to the construction site at dusk and, although he did not know the exact time, he stated that one could still drive without lights. After he set up the fallen barricades, he returned home using his car lights. He stated that upon his arrival at the scene he found that, although down, the barricades' blinkers were still all working. He was careful to check that. A report from the Division of Highways was filed July 23, 1970, stating that all the barricades were equipped with flasher lights.

Lind, the Claimant in this action, alleges that the State was negligent in the maintenance of the barricades at the construction site. The force of the Claimant's argument is that the barricades were not properly lit and/or maintained so as to inform motorists of their danger and that this failure was a breach of duty by the State and the proximate cause of Claimant's injury.

There is no substantial disagreement between the parties as to the applicable law; the dispute arises as to the application of the law to the facts presented.

The mere happening of an accident does not of itself raise any presumption of negligence on the part of

defendant. *Brown vs. Beyles,* 27 Ill.App.2d, 114, 169 N.E.2d 273, (1960). This is not a strict liability action.

The State is not an insurer against accidents on its highways. *Bovey, et al. vs. State,* 22 Ill.Ct.Cl. 95, 108, (1955), "[The State] is required only to keep them in a reasonably safe condition for the purpose to which the portion in question is devoted, and the placing of signs warning of the conditions to be met, fulfills the obligation of the State to the users of the highway."

It is the obligation of the Claimant to prove by a preponderance of the evidence that the Respondent had actual or constructive knowledge of the defect which is alleged to have caused the injury. *Manus vs. State of Illinois,* 22 Ill.Ct.Cl. 335, 339.

Claimant argues that not only was constructive notice of the allegedly dangerous conditions imposed upon the Respondent by the decision in *Whitehouse Trucking Co. vs. State of Illinois,* 25 Ill.Ct.Cl. 126, but further that *Whitehouse* requires the State to maintain the warning devices up to the precise moment of the accident. He relies on the language at page 136: "adequate warning devices in place and in working order *at the time of the accident*" (sic). However, at 135 the decision states that "(T)he court is also of the opinion that, once the warning devices are in place, it is the duty of the State to take *reasonable* precaution to see that such warning devices remain in place and in working order." (Emphasis added.) We believe the key word in this decision is "reasonable."

"Reasonable" is, of course, a term of art and cannot be held to a hard and fast definition. Black's Law Dictionary (4th Ed. 1951 p. 1431) defines reasonable as "just; proper; ordinary or usual. Fit and appropriate to the end in view."

*Whitehouse* held that it was not reasonable, in view of the stormy weather present there, for the foreman to leave the warning signals alone all night with no one to check them. Likewise, in another case advanced by the Claimant, *Bovey vs. State,* 22 Ill.Ct.Cl. 95, it was not reasonable for the State to maintain only one sign which did not adequately warn of the hazards ahead in view of the knowledge the State had of the dangerous conditions existing.

The facts of the case at bar are substantially different from *Whitehouse* and *Bovey.* Here all barricades had flashers and were righted and checked by Mr. Shawgo immediately before the occurrence. The weather was clear and dry. There was no reason for anyone to know that the barricades would not be in order shortly after they had been checked. It is clear that the State took reasonable precautions to see that the warning devices were in place and in working order.

In view of our finding that Claimant has failed to prove by a preponderance of the evidence that the State breached its duty of care to Claimant, it is not necessary to consider whether on the facts the Claimant: (i) sustained his burden of proof that he was not contributorily negligent, (ii) whether the driver was negligent, (iii) whether the driver's negligence, if any, was imputable to Claimant, and (iv) whether the negligence of the State, had it been proved, was the proximate cause of the accident or whether the negligence of the driver, if any, was an intervening cause.

The claim is hereby denied.