Caroline Ciaglo, Appellant, v. Walter F. Ciaglo, Theodore P. Majesz and Walter Kansteiner, Appellees.

Gen. No. 47,443.

First District, Third Division.

February 11, 1959.

Released for publication March 11, 1959.

Joseph Barbera, Albert A. Brown, of Chicago (Charles D. Snewind, of counsel) for appellant.

Beverly and Pause, of Chicago (Frank J. Pause, of counsel) for Walter F. Ciaglo, appellee.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for Walter Kansteiner, appellee.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

While picking plums on a farm in Wisconsin during a visit to her son who operated the farm, plaintiff fell from a ladder and was injured. She sued Walter Kansteiner, the owner, her son and one Majesz, an assistant manager, who was never served with process. At the close of all the evidence, the court instructed the jury to find defendants not guilty. Plaintiff appeals from an order denying her motion for a new trial and from the judgment entered on the verdicts.

The principal question presented, one of law and fact, is whether plaintiff was an invitee or a licensee, and involves the degree of care that defendants owed her under the attendant circumstances. There is substantially no dispute as to the salient facts. Kansteiner in 1951 purchased a dairy farm near Koshkonong, Wisconsin, consisting of two tracts, one of one hundred ninety acres on which were located the usual farm buildings, and the other of eighty and one-half acres situated about three-quarters of a mile distant and used principally for pasture. Kansteiner, a salesman by occupation, resided in Evanston, Illinois, and knew little about farming. He had employed one E. D. Comstock, a "farm manager," who acted as agent for owners of farms in that area, to advise him on matters concerning the proper management of the farm, and to arrange for the leasing of it to a competent tenant. On September 24, 1953, Comstock, on behalf of Kansteiner, leased the farm to Walter Ciaglo and Florence, his wife, for the period beginning March 1, 1954 and ending February 28, 1955. The lease consisted of two parts: a farm-operating contract and a livestock-share lease. The rent reserved was the sum of one dollar and approximately fifty per cent of the proceeds realized on the crop and livestock products during the term of

the lease. The lease was on printed forms described by the parties as used for short-term dairy-farm leases. It contained the usual provisions and covenants employed to assure the conservation of the farm lands and of the livestock, reserved right of entry for the removal of natural resources, inspection, the making of improvements, preparing the ground for crops to be harvested the following year, and for crop-storage space. It designated the acreage which might be planted to certain crops, provided for the number of jointly owned cows and young stock that should be kept, for the sharing of certain expenses such as seed, fertilizer, etc., and contained various conditions by which the tenant agreed to work and operate the farm at his own expense and in accordance with good husbandry. Provision was made for the division of livestock prior to the termination of the lease, for forfeiture in case of default on the part of the tenant, for a landlord's lien upon the crops and livestock, and for surrender of possession on the day the lease terminated.

After Ciaglo took possession he operated the farm in accordance with the lease which provided that he and Kansteiner share equally the expenses and the profits. On the purchase of feed, for example, the dealer billed one-half to Kansteiner and one-half to Ciaglo; with respect to payment for the farm milk, the purchasing dairy sent two checks in equal amounts, one to Kansteiner and the other to Ciaglo. This was a dairy-farm operation; grain and hay were grown for feed, and only the surplus was sold.

To the rear of the house there was a three to four acre pasture, enclosed by a woven wire fence, as well as by an old stone fence which had fallen into disrepair. Along this fence were several plum trees, varying in number from three to ten, as related by the witnesses. Kansteiner called them "volunteer" or "wild plum

363

trees" which had not received any care. It was in this enclosure that Ciaglo kept the yearlings, about ten head in all. They were fed two or three times a day with hay, grain and silage.

Plaintiff is the mother of defendant Ciaglo and resides in Chicago, Illinois. She had done janitress work in Chicago buildings for many years. Immediately prior to going to her son's farm she had been employed at the American Furniture Mart but was laid off about July 1, 1954. The following month she had gone up to the farm and had stayed about a week, then returned to Chicago to pick up her unemployment check. Over the Labor Day week-end her other son and daughter-in-law, who lived with her in Chicago, accompanied by two of their children, drove her back to the farm following a phone call from her son in Wisconsin telling her that he had injured his finger. The Chicago Ciaglos returned home after Labor Day, but plaintiff remained at the farm, where she attended to some of the usual housekeeping and farm chores—she washed dishes, cleaned kitchen cabinets, fed the chickens and the yearlings.

Plaintiff testified that at breakfast on September 15, 1954, the day of the accident, her son told her: "You go, Ma, help Florence pick up the plums"; he added that he was going to take the plums to town and sell them. She stated that her son had not agreed to pay her any money; plum picking was evidently one among a number of farm chores that she was performing. Accordingly, following breakfast, plaintiff, accompanied by her daughter-in-law Florence, went out to pick plums. Plaintiff reached the plums by ladder, and after she had filled a small basket, she would descend from the ladder and place the plums on the ground. She stated that there were two ladders in the immediate vicinity of the trees, that she used one approximately eight or ten feet high, while her daughter-in-

364

law took the smaller of the two ladders. In the morning the two women worked within five to seven feet of each other, but in the afternoon, after lunch, plaintiff worked alone. Her son had had his silo-filler on loan to a neighboring farmer, and that day he had spent all the forenoon and part of the afternoon dismantling the filler so that he could bring it back to his own farm. About two-thirty he returned momentarily to his own farm prior to setting out to pick up his children at school; at that time he glimpsed his mother in the orchard "picking the plums off of the ground." When, about four o'clock, he returned with his silo-filler, he heard a yell, ran to the enclosure, and found plaintiff against a tree in a sitting position. According to Ciaglo, she told him that she had fallen off the ladder. Plaintiff testified that immediately prior to the accident she saw one of the yearlings with its head against the ladder on which she was standing, causing it to shake; she became frightened, caught hold of a tree branch which broke, and fell to the ground. A doctor was called, and on his arrival plaintiff was taken to a hospital.

◼ In her complaint plaintiff alleged that Ciaglo, Majesz and Kansteiner operated the farm under a written agreement of a joint venture. In her amendment thereto she alleged that the defendants operated the farm as copartners. The trial judge who had examined the farm-operating contract and the livestock-share contract concluded that these instruments constituted a lease of the premises; that the relationship existing between Kansteiner and Ciaglo was that of landlord and tenant, not that of a partnership or a joint venture; that the agreements had all the attributes of a lease; that they were made for a period of one year; that no provision was made for loss, only for profit, from the produce of the farm; that the word "lease" was used repeatedly throughout the entire

agreement; and that it was evidently the intention of the parties to enter into a lease. In Wagner v. Buttles, 151 Wis. 668, 139 N. W. 425, the court had under consideration an instrument similar in its terms and provisions to the one here under study, and it was there held, upon the authority of other Wisconsin cases cited in the opinion, that where a landowner agrees to permit another, for a definite term, to work his farm and to receive as compensation for the use of the land a portion of the crops raised thereon, the agreement creates the relation of landlord and tenant. Cases cited in Kansteiner's brief indicate that courts in other jurisdictions as well have reached the same conclusion: Davis v. Burton, 126 Mont. 135, 246 P.2d 236; Hampton v. Struve, 160 Neb. 305, 70 N.W.2d 74; Johnson v. Watland, 208 Iowa 1370, 227 N. W. 410. We think the trial court here properly construed these instruments to be leasing arrangements.

The controlling question with respect to Ciaglo is one of law and fact. The trial judge, in arriving at his decision for a directed verdict of not guilty, considered the pleadings, the facts and the legal questions involved, as indicated by his oral opinion at the conclusion of all the evidence. He found that plaintiff was a social guest, or licensee, and not an invitee or employee, and indicated that he had also considered the relationship of the plaintiff to her son. He found from the evidence that Ciaglo owed his mother only ordinary, not reasonable, care.

■ ■ Minor services performed by the guest for the host during the visit will not be sufficient to alter his status as guest. Lubenow v. Cook, 137 Conn. 611, 79 A.2d 826; Gudwin v. Gudwin, 14 Conn. Sup. 147. Greenfield v. Miller, 173 Wis. 184, 180 N. W. 834, holds that a social guest in the position of plaintiff here cannot recover without a showing of active negligence. In Krantz v. Nichols, 11 Ill.App.2d 37, the court

recognized the principle that incidental tasks performed for the benefit of the host do not change the status of the guest from the position of licensee to one of invitee. In the course of its opinion the court found the law to be "well settled that a social guest is treated as a licensee and not an invitee and therefore must prove wilful and wanton misconduct in order to recover against the possessor of the land," citing Ellguth v. Blackstone Hotel, Inc., 408 Ill. 343, Biggs v. Bear, 320 Ill. App. 597, and Dent v. Great Atlantic & Pacific Tea Co., 4 Ill.App.2d 500. In 25 A.L.R.2d the author of an article on the subject states that "it has been held that a guest can recover only where his injury is the result of active and affirmative negligence of the host while the guest was known to be on the premises, or of the failure of the host to remove or warn against defects amounting to a trap or pitfall known by the host to present a danger to the guest, and which he also knows the guest will not, in the exercise of reasonable care, discover and avoid for himself." Continuing, the author states that "some of the courts have equated the rule of legal liability with that of homely hospitality, saying that the host should treat the guest as a member of the family, and the guest, on the other hand, should accept the conditions ordinarily prevalent in his host's home without cavil or complaint." It has been generally held, also, as the author points out, that "one who enters upon premises as a social guest will not escape the liabilities of that status merely by performing incidental services beneficial to the host in the course of the visit." We think these principles enunciate the rule applicable to the circumstances of this case.

■ There is no evidence to sustain the additional contention of plaintiff that her son was guilty of either active or passive negligence. There was a total failure on the part of plaintiff to produce evidence of any

negligence or liability on the part of Ciaglo which proximately caused the injuries of which plaintiff complains. She admitted that she fell from the ladder and stated unconditionally that she "did not see the little cows at any time before" she "fell off the ladder," and that her son came to the pasture after the accident. "No one was around" when she fell from the ladder.

To sustain her contention that Ciaglo was guilty of negligence, plaintiff argues that he knew the propensities of young cattle to butt into fence posts, trees and other upright objects, and that, although knowing these facts, he nevertheless directed her at the breakfast table to enter the pasture for the purpose of picking plums for the market. An attempt was made to show, through an expert who was engaged in cattle breeding, the habits of yearlings. He stated that, like all young animals, they have a great deal of pep and energy; that they are curious but hesitant and careful—they would not run up to a strange object immediately but would come up, stand around and investigate. There is lacking in the testimony, however, any suggestion that the yearlings on Ciaglo's farm had vicious, malicious or mischievous propensities. Under the substantive law of Wisconsin it has been held that "If risk of harm cannot be foreseen by a reasonably prudent and intelligent man, the risk is not unreasonable, hence there is no negligence, consequently no liability." Osborne v. Montgomery, 203 Wis. 223, 234 N. W. 372. Plaintiff had been born on a farm in Poland, on which her father kept two cows; she testified both that she had spent the first seven years of her life, and also the first seventeen years of her life, there—the discrepancy in her testimony can be attributed, in all likelihood, to plaintiff's lack of fluency in English; she testified in part through an interpreter. In any event, although she stated that she had "never learned anything about the habits of cows when" she "was in

Poland," she could not have been entirely unfamiliar with the activities of cows, as a citybred person would be; and it is undisputed that she had fed the yearlings on her son's farm before the accident. Under the circumstances it would seem that her son could realistically assume that she had some familiarity with bovine characteristics.

It is undisputed that the owner of an animal is bound to take notice of the general propensities of the class to which it belongs, but he is under no obligation to guard against injuries which he has no reason to expect. Unless it be shown that an animal has a mischievous propensity to commit injury and that the owner had notice thereof, or that the injury was attributable to some other negligence on his part, he cannot be charged with negligence. In this respect the rule of law in Wisconsin and in Illinois is in accord. Sopchak v. Kadulski, 213 Wis. 293, 251 N. W. 232; Domm v. Hollenbeck, 259 Ill. 382.

The court properly found that if the case of Ciaglo fell, of necessity the case of Kansteiner must also fall, since he had no part whatever in the operation of the farm, and there is no evidence charging either him or Ciaglo with negligence.

Based on the evidence, there was no question of fact for the jury to consider, and we think the court was correct in directing verdicts in favor of both defendants; accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BRYANT and BURKE, JJ., concur.