SCOTT LITTON FUGATE, Plaintiff-Appellee and Cross-Appellant, *v.* SEARS, ROEBUCK AND COMPANY, *et al.,* Defendants-Appellees and Cross-Appellees—(G. W. PEARCE, Third-Party Plaintiff-Appellant and Defendant-Appellant, *v.* SEARS, ROEBUCK AND COMPANY, *et al.,* Third-Party Defendants-Appellees and Cross-Appellees.)

(No. 54476; ■■■

First District (5th Division)—June 8, 1973.

658

ENGLISH, J., dissenting.

Goldsmith, Dyer, Thelin & Schiller, of Aurora, (Richard D. Schiller, of counsel,) for appellant G. W. Pearce.

Harry I. Parsons, of Chicago, (Robert J. Nye and Sandra G. Nye, of counsel,) for appellees Sears, Roebuck & Company and A. O. Smith Corporation.

Horwitz, Anesi & Ozmon, of Chicago, and Dario A. Garibaldi, of Flossmoor, (Nat P. Ozmon, of counsel,) for appellee Scott Litton Fugate.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee Northern Illinois Gas Company.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff, Scott Litton Fugate, was severely injured by the explosion of a gas hot water heater located in the basement of an apartment building at 424 Clark Street in Aurora, Illinois. At the time he was in a second-floor apartment located directly above the heater. His complaint as amended contained a count of strict liability against defendants A. O. Smith Corporation, the manufacturer of the water heater, and Sears,

Roebuck and Company, which sold it at retail, counts of general negligence (alleging the applicability of the *res ipsa loquitur* doctrine) and specific negligence against the administrator of the estate of J. Ogden Clark, the owner of the building, and G. W. Pearce, individually and doing business as G. W. Pearce Realty and Insurance Agency (hereafter Pearce), which managed the building, and a count alleging specific negligence on the part of Northern Illinois Gas Company, which supplied gas to the heater. Pearce filed a third-party complaint seeking indemnity against A. O. Smith, Sears and Northern Illinois Gas. As to A. O. Smith and Sears, Pearce alleged breach of expressed and implied warranties, active (as opposed to his passive) negligence, and strict liability; as to Northern Illinois Gas, Pearce alleged active negligence.

At the close of all the evidence the court directed a verdict in favor of Northern Illinois Gas on the third-party complaint of Pearce; motions for directed verdicts by other defendants and the other third-party defendants were denied; and motions for directed verdicts by plaintiff against all defendants but Northern Illinois Gas were reserved. The jury was given instructions covering all of the theories alleged in plaintiff's complaint, set forth *supra*. On Pearce's third-party claim the jury was given instructions as to breach of express warranty by Sears and breach of implied warranty by A. O. Smith. Pearce's tendered instructions as to the active negligence of Sears and A. O. Smith were refused. No instructions were submitted by Pearce covering the theory of strict liability of Sears or A. O. Smith. The jury was additionally instructed that as a matter of law plaintiff was entitled to recover damages from one or more of the defendants and it was the jury's duty to determine who should be held liable. The jury found for the plaintiff and against the defendants, the administrator of the estate of J. Ogden Clark and George Pearce in the sum of $143,000. The jury also found in favor of A. O. Smith and Sears on both plaintiff's complaint and Pearce's third-party claim. The court denied plaintiff's post-trial motions for judgments notwithstanding the verdicts against A. O. Smith and Sears or for a new trial against A. O. Smith, Sears, and Northern Illinois Gas.

Pearce appeals from both judgments. Plaintiff has cross-appealed as to A. O. Smith, Sears and Northern Illinois Gas.[1] In Pearce's capacity as defendant he makes the following contentions: (1) that assuming he was negligent, said negligence, as a matter of law, was not a proximate cause of plaintiff's injuries; (2) that as a matter of law he was not guilty of negligence; included are Pearce's contentions (a) that the court erred in ruling as a matter of law that the doctrine of *res ipsa loquitur* was

---

[1] No appeal has been taken by the administrator of the estate of J. Ogden Clark.

applicable to the case; (b) that it was improper to submit counts of general negligence (under a *res ipsa loquitur* theory) and specific negligence to the jury; and (c) that the court erred in refusing to instruct the jury that defendant Pearce denied the applicability of *res ipsa loquitur;* (3) that the court erred in ruling as a matter of law that plaintiff had the status of "an invitee" in the apartment at the relevant time and that the court improperly excluded certain evidence allegedly relevant to this issue; (4) that the court erred in excluding evidence relating to plaintiff's employment record, other injuries he had sustained, his failure to file Federal Income Tax Returns, and his "habitual intoxication"; (5) that the court erred in denying Pearce's motion for a new trial based on newly discovered evidence; and (6) that the court erred in instructing the jury that as a matter of law plaintiff was entitled to recover from one or more of the defendants.

In Pearce's capacity as third-party plaintiff he contends: (1) that the court erred in failing to submit to the jury the issue of breach of express warranty as to Sears and breach of implied warranty as to A. O. Smith; and (2) that the court erred in directing a verdict in favor of Northern Illinois Gas and against Pearce.

Pearce does not argue that the damage award was excessive or that plaintiff was guilty of contributory negligence.

In plaintiff's cross-appeal he makes the following contentions: (1) that the court erred in failing to direct a verdict against the defendants Sears and A. O. Smith on the issue of liability or, in the alternative, that the jury verdicts in their favor were against the manifest weight of the evidence; and (2) that the jury verdict in favor of Northern Illinois Gas and against plaintiff was against the manifest weight of the evidence and that the court's action in directing a verdict in favor of Northern Illinois Gas and against Pearce on Pearce's third party claim prejudiced plaintiff's case against Northern Illinois Gas which as noted was submitted to the jury.

The pertinent evidence elicited at trial follows:

Glen Zelensek, a member of the Aurora Fire Department, testified for plaintiff. At 3:00 A.M. on February 13, 1962, he was called to the apartment building at 424 Clark Street in Aurora; it had been blown apart. After investigation it was determined that the gas hot water heater had caused the explosion. The tank portion of the heater was found about 500 yards from the building.

Nanis Crawford, the resident in the apartment plaintiff was visiting at the time of the explosion, testified for plaintiff. She had lived there for five years. Her daughter, Eileen Crandall, resided with her from time to time. Mrs. Crandall was institutionalized at a State Hospital and would

come to the witness' apartment on weekends and occasionally for a week when given a pass. On the night in question her daughter and plaintiff arrived at the apartment at about 8:30 P.M. (the 12th of February). The three of them watched television and ate. She "dozed off a little bit" just prior to the explosion. She then heard a terrible noise, looked up and saw a hole in the floor and ceiling of the room.

George W. Pearce was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act. He has been in the realty management business since 1950 and has managed the building in question since April 25, 1954. His duties include collecting rents and personally maintaining and inspecting the premises. On April 26, 1954, Pearce bought from Sears the "Homart" gas hot water heater which ultimately exploded. The heater was installed by Sears' employees within a week after the purchase. Pearce then called Northern Illinois Gas to inspect the installation. After receiving a phone call from a representative of the gas company, Pearce inspected the heater and found it in operating order. He saw the gas hot water heater during his periodic inspections of the basement of the building. Each month he would withdraw a bucket of water from the heater, as recommended, to keep down the lime content; the faucet for withdrawing the water was at the bottom of the heater. He did not know whether there was a temperature and pressure safety relief valve (hereafter a "T and P" valve) on the heater; he assumed all of the necessary safety precautions were on the heater when it was sold to him. On two occasions, between 1954 and 1960, the pilot light on the heater went out and Peace called Northern Illinois Gas to relight it. In March 1960 Sears replaced the thermocouple on the heater. From March 1960 until the date of the explosion Pearce continued to periodically inspect the premises and draw out water from the base of the heater. He was in complete control of inspecting and maintaining the heater. Mrs. Crawford was a tenant in the building at the time of the explosion. He knew that Mrs. Crawford's daughter visited her from time to time.

On cross-examination by counsel for Sears, Pearce testified that he could not recall who had installed the heater. On cross-examination by counsel for Northern Illinois Gas, Pearce testified that he didn't know whether there was a "T and P" valve connected to the heater when it was installed; that he didn't know what a "T and P" valve was. At his deposition taken about four years earlier, he had stated that there was such a device on the heater and that it was located at the top of the heater. During his inspections of the premises he did not inspect the "T and P" valve; at his deposition he testified to the contrary.

Upon reexamination by his own counsel, Pearce testified that he has

never installed a gas hot water heater or had training in that field. He is unaware as to the types and locations of safety devices on gas water heaters; he has only drained fluid from the heater once a month. When he purchased the heater, no one from Sears told him about a "T and P" valve; he received no written literature relative to the heater; on recross-examination by counsel for Sears he testified that he was given a written warranty. Counsel for Pearce and Northern Illinois Gas then stipulated that when the gas company is called upon to inspect a new installation, it will do so and then turn on the gas and light the pilot light.

Edward McLean, an industrial engineer, testified for plaintiff. He visited the scene of the explosion two days after the accident. It was a "typical" steam explosion. He was of the opinion that the explosion was due to two interrelated factors. First, the temperature control valve, which is sold as an integral part of the unit and which serves to shut off the flow of gas to the heater when the water in the heater reaches a certain degree, malfunctioned. Thus gas continued to flow into the heater and the water temperature continually increased. Second, either there was no "T and P" valve on the unit or, if there was, it malfunctioned. There are different types of "T and P" valves, but their function is to prevent an explosion should the water in the tank become overheated. McLean did not find a "T and P" value during his investigation of the premises. The failure to have a "T and P" valve on the heater would be contrary to the national safety codes. The pressure in the tank thus built up, "resulting [in] a missile type ejection of the tank from and through the building."

On cross-examination by counsel for Sears, McLean testified that he looked at the pamphlets that accompanied the heater when it was sold. The instructions for installation state that the heater should be equipped with a "T and P" valve. If there was a "T and P" valve on the unit, it probably malfunctioned because of dirt build-up on portions of the valve. It should be opened manually at least once a year in order to check that it is in proper working order. The temperature control valve is located at the bottom of the tank and the "T and P" valve is at the top of the heater. On cross-examination by counsel for Pearce, McLean stated that there were three types of "T and P" valves. When asked if one needed expertise and certain instruments to determine whether a "T and P" valve was functioning properly, he responded that technically speaking this was correct. However, one type of valve, a diaphram type, is equipped with a little lever which one can lift and water will flow through the valve if it is in working order. This procedure should be followed at least once a year. On cross-examination by counsel for

Northern Illinois Gas, McLean testified that the malfunction in the temperature control valve must have occurred either on the day of, or very shortly before, the explosion. On redirect, McLean testified that a "T and P" valve is a simple device costing about $12.

Plaintiff testified in his own behalf and stated that on the evening in question he met Eileen Crandall at a hot dog stand and she invited him to her mother's apartment. He had known Eileen Crandall for a year and had been to her mother's apartment before. He was sitting on a couch watching TV and just dozing off when the explosion occurred. On cross-examination by counsel for Sears he stated that on the date of the explosion he resided with a friend in Aurora on New York Street. Before that he lived with a friend on Galena Street for a few days. He didn't have a permanent address in Aurora and was just working there at a summer resort; he had worked there one month. During 1961 he worked in Batavia, Illinois, and lived in the David Hotel in Aurora for "quite a while."

Marvin Salzenstein, a consulting engineer, testified for plaintiff. He had inspected parts of the water heater on two occasions. Based on these inspections he believed that the temperature control valve had malfunctioned. In response to a hypothetical question he gave his opinion that the explosion was caused by the excessive heating of the water tank and either the lack of, or the malfunction of, the "T and P" valve. He was of the further opinion that in 1954 good and accepted engineering practices called for the presence on the heater of a "T and P" valve as an integral part of the unit itself, *i.e.*, the manufacturer should place such a valve on the unit and should not rely on those making the actual installation. A "T and P" valve should be opened manually once every six months so that any accumulated sediment may be flushed out. On cross-examination by counsel for Sears, Salzenstein testified that the "T and P" valve would be installed on a pipe which attaches to the top of the tank. On cross-examination by counsel for Pearce, Salzenstein testified that the temperature control valve had malfunctioned, but he did not know why. Plaintiff's Exhibit No. 23, the instruction manual given to a customer when Sears sells a heater, states in part:

> "In order to assure the efficiency and life of the heater, it is important at frequent intervals to drain an amount of water sufficient to remove any sediment from the bottom of the tank. This will assure clean water at all times. The drain cock is threaded to receive a standard hose coupling."

It was the witness' opinion that the instructions were incomplete for failure to mention the necessity of periodically opening the "T and P" valve to assure it was functioning properly.

Four physicians testified for the plaintiff. In brief, plaintiff lost 75% use of his left leg due to the explosion, went through several operations on his leg, and spent over a year in various hospitals and restoration centers. It is unnecessary to further describe the medical testimony since Pearce has not raised any issues pertinent thereto.

Robert Hansen, a merchandise manager for Sears in Aurora, testified for the defendants A. O. Smith and Sears. He identified the "easy payment" order blank on which the purchase of the heater in question was recorded. It does not indicate who installed the water heater. When Sears installs a heater there is an installation charge; there was no such charge listed on the instant order blank. On cross-examination by counsel for plaintiff, Hansen testified that Sears purchases the heating unit from A. O. Smith and sells it at retail. Sears does not alter the unit in any way. In 1954 Sears sold "Homart" water heaters without a "T and P" valve attached thereto; it was an optional item.

Ronald Barclay, employed with Sears in the customer service department, testified for defendants A. O. Smith and Sears. He identified plaintiff's Exhibit No. 23 as the installation instruction manual that came with the heater. In March 1960 Sears replaced the thermocouple on the heater. On cross-examination by counsel for Pearce he stated that when the thermocouple was replaced in 1960 it was unnecessary for him to inspect the entire heater; he knew the thermocouple was the major problem with these heaters and therefore checked it and found it to be defective. Sears will install a water heater if requested by a customer.

Angelo Duncan, a manger of product engineering for A. O. Smith, testified for defendants A. O. Smith and Sears. He described the "Homart" water heater and then stated that it was Sears' policy not to permit shipment of a heater unless there was an accompanying installation instruction manual. Each unit comes with this manual and a guarantee. Both were introduced into evidence. On cross-examination by counsel for plaintiff, Duncan testified that it was foreseeable that the temperature control valve would fail within a short or long period of time. It is also foreseeable that upon failure of said valve the temperature or the pressure in the tank will build up, and unless there is a "T and P" valve, it is foreseeable that an explosion could occur. A. O. Smith relies on someone else to install a "T and P" valve; he stated, "we have to." At the top of page four of the installation instruction manual it states as follows:

"NOTICE—IMPORTANT—WARNING: It is imperative that an approved type of temperature and pressure relief valve be installed in the hot water line, close to the heater, (see Fig. 1 & 2 [set forth on page 2 of the manual]). This heater is guaranteed

for a maximum working pressure of 127½ pounds; failure to install this relief valve will void the guarantee and release the manufacturer of this heater and Sears, Roebuck and Co. from any claims for damages which may result from temperatures and pressures beyond the allowable maximum."

Sears' "Homart" guarantee states as follows:

"WE GUARANTEE the Homart * * * Heater * * * to be free from defects in material and workmanship and to give satisfactory service when installed and operated in accordance with our instructions, when properly protected by a relief valve so that water pressure will not exceed the working pressure shown on the heater * * *."

Robert Johnson, a lieutenant in the Aurora Police Department, was called to testify outside the presence of the jury by the defendant, the administrator of the estate of J. Ogden Clark, for the purpose of making the following offer of proof. Johnson is in charge of the Department's records section. Plaintiff has an arrest record. The addresses he has given to the police are as follows: the "Grand Hotel" at an unidentified address on September 9, 1956; Joliet, Illinois, in 1961; 71 South Broadway, Aurora, on October 30, 1961; 224 Clark Street, Aurora, on November 11, 1961; 424 Clark Street, Aurora, Illinois, on February 13, 1962 (the date of the explosion); and several other addresses after the date of the explosion. There was no building at 224 Clark Street at the time the plaintiff gave that address. The offer of proof was denied.

Defendant and third party plaintiff Pearce was recalled as a witness in his own behalf. He has purchased about 100 water heaters since 1954. A "Homart" heater cost $85 or $90 in 1954. No one from his agency installed the heater. The building owner's records show no expense listed. for the installation of the heater. The total bill for the instant heater was $139.95 and Pearce said this included a labor installation charge. On cross-examination by counsel for Sears, Pearce said that there was nothing in the bill for the heater that would indicate that any labor charge was made.

It was stipulated between Pearce and Northern Illinois Gas that on December 23, 1950, Western United Gas and Electric Company merged with Public Service Company of Northern Illinois; that on March 17, 1953, Public Service Company of Northern Illinois merged with Commonwealth Edison Company; that on November 25, 1953, Northern Illinois Gas was incorporated in the State of Illinois; that Northern Illinois Gas was deeded the property of Commonwealth Edison Company on or about February 9, 1954.

An offer of proof outside the presence of the jury was then submitted

by Pearce. If plaintiff were called to testify, he would state that he and Eileen Crandall engaged in an act of sexual intercourse at the apartment before the explosion, in the presence of Mrs. Crawford; that plaintiff at the time of, and several years prior to the explosion, was an habitual drunk and a "drifter"; that plaintiff had not filed Federal income tax returns for many years prior to the explosion; and that he had not sought gainful employment since the explosion. The offer of proof was denied.

Frank Willis, an employee of Northern Illinois Gas in the customer service department, testified for the defendant Northern Illinois Gas. Public Service Company was a division of Commonwealth Edison until October 1954 when it became Northern Illinois Gas Company. It is the company's procedure that when a service man is called to light a pilot light of a heater, he also inspects the appliance; if he finds a defect he will correct it, if possible, or place a caution tag on it if not possible. If the customer is not present when an appliance is "tagged," the customer is notified of the defect by mail. When a customer calls the company for service, a customer service ticket is kept by the company. The records show that only one such ticket is on file for 424 Clark Street and this was dated January 23, 1961, when the company was requested to light the pilot light on the heater. The company keeps its service tickets for only three years. On cross-examination by counsel for Pearce, Willis testified that Northern Illinois Gas Company started to operate in late 1953 or in 1954.

George Pearce was recalled as a witness in his own behalf. Northern Illinois Gas never "tagged" the heater in question. On cross-examination by counsel for Northern Illinois Gas, Pearce stated that he was never present when a gas company employee "might have been" out to look at the heater.

After the jury verdict was returned, Pearce filed a motion for a new trial based on newly discovered evidence. The affidavit of Pearce's attorney attached to the motion alleged that Charles Kolkay saw a newspaper article following the instant trial and thereafter contacted defendant Pearce. Kolkay allegedly told Pearce that he had been in the basement of the building several times prior to the explosion and had noticed that the heater was equipped with a "T and P" valve which had no handle or lever on it for periodic manual cleaning. The motion was denied. At Pearce's deposition, taken four years prior to the trial, Pearce stated that Charles Kolkay did repair work for him on the property in question. Kolkay's name was repeated frequently during the deposition.

*Opinion*

We first address the issues raised by defendant-third party plaintiff-

Pearce in his capacity as defendant. His first contention is that assuming he was negligent, said negligence, as a matter of law, was not a proximate cause of plaintiff's injuries.

■■ Every tort action grounded in negligence requires the showing of (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, i.e., a negligent act or omission, which (3) proximately causes a (4) resulting compensable injury. (*Lasko v. Meier*, 394 Ill. 71, 67 N.E.2d 162; *Apato v. Be Mac Transport Co.*, 7 Ill.App.3d 1099, 288 N.E.2d 683.) Assuming that plaintiff was lawfully on the premises at the time of the explosion,[2] Pearce owed plaintiff the duty of exercising ordinary care to keep those portions of the premises which were under his control or used in common by the tenants in a reasonably safe condition. (*Shiroma v. Itano*, 10 Ill.App.2d 428, 431, 135 N.E.2d 123; *Hart v. Sullivan*, 324 Ill.App. 243, 58 N.E.2d 301; 49 Am. Jur.2d, Landlord and Tenant, sec. 811, p. 772.) Pearce also assumes under this argument that he breached this duty.

■■ Proximate cause, the next link in attaching liability and the "tool" used to preclude infinite liability as a result of a negligent act or omission (*Cunis v. Brennan*, 7 Ill.App.3d 204, 208, 287 N.E.2d 207; Prosser, Law of Torts (3d ed. 1964), p. 240), is established if the injury is the natural and probable result of the negligent act or omission and one which an ordinarily prudent person ought to have foreseen as likely to occur as a result of his negligence; it is not essential that the person should have foreseen the precise injury that resulted. (*Neering v. Illinois Central R.R. Co.*; 383 Ill. 366, 50 N.E.2d 497.) The issue is ordinarily left for resolution by the trier of fact. *Neering* at 381; *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 84, 117 N.E.2d 74.

In the instant case it is obvious that if Pearce was guilty of negligent acts or omissions which permitted the gas hot water heater to explode, the resulting injuries to the plaintiff were a proximate result (under the standards set forth *supra*) thereof, and the trial court did not err in refusing to direct a verdict in favor of Pearse as to liability for this reason. Pearce repeatedly points to the testimony of various witnesses who stated that the explosion was caused by the malfunction of the temperature control valve along with the absence or malfunction of the temperature and pressure relief valve ("T and P" valve). From these facts he urges that his negligent acts or omissions with respect to the gas hot water heater could not have caused the explosion and thus leave him liable for the resulting injuries. He cites *Shaw v. Swift & Co.*, 351 Ill.App. 135, 114 N.E.2d 330; *Tiffin v. Great A. & P. Tea Co.*, 18 Ill.2d

---

[2] We will consider this question later.

48, 162 N.E.2d 406; and *Shramek v. General Motors Corp.*, 69 Ill.App.2d 72, 216 N.E.2d 244. However, in these cases there was a total failure of proof that the acts of the defendants produced the resulting injuries, *i.e.*, causation in fact was not shown. (See Prosser, Law of Torts (3d ed. 1964), pp. 240, 241, 245.) In this case, assuming Pearce was negligent by either failing to assure that there was a "T and P" valve on the heater, or if there was one on it, that it was maintained in good operating condition by periodically inspecting it, or under *res ipsa loquitur*, there can be no doubt that said negligence, in light of what the experts testified to, *supra*, was a proximate cause of plaintiff's injuries. (See *Brumm v. Goodall*, 16 Ill.App.2d 212, 225, 226, 147 N.E.2d 699.) Pearce's arguments are more properly directed to the issue of whether as a matter of law he did not breach the duty which he owed the plaintiff (i.e., that he was not negligent) rather than whether his negligence was a proximate cause of the injury.

This leads us into Pearce's second contention that as a matter of law he was not guilty of negligence. He also raises several issues relating to the doctrine of *res ipsa loquitur*.

■■■ As noted, Pearce owed plaintiff the duty to use ordinary care in maintaining the gas hot water heater in a reasonably safe condition. Ordinary care is the care which a reasonably careful person would use under circumstances similar to those shown by the evidence. (I.P.I., sec. 10.02, and cases there cited.) If a reasonably careful person would ordinarily foresee that an omission to do a certain act or the commission of an act in a certain manner would probably result in injury, and injury to another flows as a result therefrom, such act of omission or commission constitutes negligence. (*Hays v. Place*, 350 Ill.App. 504, 113 N.E.2d 178.) As stated in Prosser, Law of Torts (3d ed. 1964), p. 148: "[T]he real basis of negligence * * * is behavior which should be recognized as involving unreasonable danger to others." The issue of negligence is ordinarily one for the jury. *Hays* at 509; see also *Lance v. Senior*, 36 Ill.2d 516, 224 N.E.2d 231.

Pearce argues that the defect in the temperature control valve was a "latent defect" and therefore he could not be held liable for failing to detect its defectiveness. However, the essence of plaintiff's case was not that Pearce failed to detect the defect in the temperature control valve, which all of the experts conceded failed for some unknown reason after functioning properly for eight years, but rather, his failure to place a "T and P" valve on the unit or his failure to periodically inspect it (assuming one was on the unit) to determine if it was still in proper operating condition. Pearce had purchased over 100 water heaters during his

many years in the real estate management business. At his deposition he testified that there was a "T and P" valve on the unit and was able to designate its specific locality, *i.e.*, at the top of the unit. He further testified at the deposition that his periodic inspections included inspecting the "T and P" value. His testimony at trial was diametrically opposite. He denied knowing whether there was a "T and P" valve on the unit. Other testimony revealed that each water heater is sold with an accompanying guarantee and instruction manual. Pearce denied ever seeing the manual but acknowledged receiving the guarantee which stated that it was effective only if the unit was "properly protected by a relief valve." Under these circumstances we cannot say that the evidence viewed in its aspect most favorable to the plaintiff so overwhelmingly favored the defendant that no jury verdict for the plaintiff based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.

■■ Pearce next contends that the court erred in ruling that the doctrine of *res ipsa loquitur* was applicable to the case. The requisite elements of *res ipsa loquitur* (which raises a rebuttable inference of defendant's negligence) are: (1) that the event must be of a kind which ordinarily would not occur in the absence of someone's negligence; (2) that the instrumentality which caused the injury must have been within the exclusive control of the defendant; and (3) that the plaintiff was in the exercise of ordinary care. (*Metz v. Central Ill. Electric & Gas Co.*, 32 Ill.2d 446, 207 N.E.2d 305.) Pearce does not argue that elements (1) or (3), *supra*, were absent in this case. Rather, he stresses that plaintiff's experts testified that *someone* had been careless with respect to the heater, but that defendant had not been singled out as having committed specific acts of negligence. But under *res ipsa loquitur* specifying the acts of negligence is unnecessary. Plaintiff need only show defendant's exclusive control over the instrumentality and this serves to fix the inference of negligence created by the doctrine as to that defendant. (See *Drewick v. Interstate Terminals, Inc.*, 42 Ill.2d 345, 348, 247 N.E.2d 877.) The testimony was unequivocal as to the fact that Pearce had exclusive control over the maintenance of the gas hot water heater and therefore Pearce's contention is without merit.

■■ Pearce next contends that the court erred in submitting counts of both specific and general negligence (*res ipsa loquitur*) to the jury. Both were pleaded and supported by the evidence. This contention has been rejected under similar circumstances in *Erkman v. Northern Illinois Gas Co.*, 61 Ill.App.2d 137, 210 N.E.2d 42; and *Collgood, Inc. v. Sands Drug Co.*, 5 Ill.App.3d 910, 284 N.E.2d 406.

██ Pearce next contends that the court erred in refusing to include in the jury instruction covering *res ipsa loquitur* that Pearce "denied the applicability" of the doctrine. His contention is without merit. As stated in *Drewick* at 349:

> "Whether the doctrine applies in a given case is a question of law which must be decided in the first instance by the trial court. (Metz v. Central Illinois Elec. and Gas Co.) [32 Ill.2d 446, 207 N.E.2d 305.] Once this decision is made, however, it becomes the function of the jury to weigh the strength of the inference of negligence arising from the facts in evidence."

The instruction covering plaintiff's *res ipsa loquitur* theory was a verbatim recitation of I.P.I. 22.01 which covers the *res ipsa loquitur* theory.

Pearce's third contention is that the court erred in ruling as a matter of law that plaintiff was a social guest of Mrs. Nanis Crawford at the time of the explosion. Several related preliminary evidentiary rulings must be addressed first.

Pearce attempted to offer proof that plaintiff was not a social guest of Mrs. Crawford and was not legally on the premises because (1) Mrs. Crawford was no longer a tenant at the time of the explosion and therefore she and the plaintiff were trespassers, (2) Mrs. Crawford violated verbal instructions to the effect that no one other than herself was to occupy the apartment; that her daughter, Eileen Crandall, was an illegal occupant and plaintiff was thus the "invitee" of an illegal occupant and not a social guest of the true tenant, or (3) while plaintiff was in the apartment during the evening of the explosion, he and Eileen Crandall engaged in an act of sexual intercourse in the presence of Mrs. Crawford. It would serve only to unduly lengthen this opinion by entering into a detailed discussion of these contentions. It is sufficient to state that after our review of the record we conclude that the trial court properly refused to admit the aforementioned offers of proof.

██ We now address the issue of whether the court properly ruled that as a matter of law plaintiff was a social guest of the tenant, Mrs. Crawford. In one portion of his brief Pearce concedes that the plaintiff was a social guest of the tenant at the time of the explosion. He then argues that the law requires the manager of an apartment building to refrain only from wilfully and wantonly inflicting injury upon the social guest of a tenant. This is incorrect. As noted earlier, a managing agent's duty to social guests of a tenant, with respect to instrumentalities within the agent's control, is to exercise ordinary care. The cases cited by Pearce in support of his proposition are inapposite. They deal with the duty of a homeowner to his social guest, and not that of the landlord or managing agent to the social guest of a tenant. *Drews v. Mason,* 29 Ill.App.2d

269, 172 N.E.2d 383; *Ciaglo v. Ciaglo*, 20 Ill.App.2d 360, 156 N.E.2d 376; *Krantz v. Nichols*, 11 Ill.App.2d 37, 135 N.E.2d 816.

■■ Pearce then argues that the issue of plaintiff's status in Mrs. Crawford's apartment was a jury question. Ordinarily one's status on the property of another is a jury question. However, in applying the *Pedrick* standard the issue becomes one of law if when viewing all of the evidence in its aspect most favorable to the defendant, said evidence so overwhelmingly favors the plaintiff that a finding by the trier of fact that the plaintiff was not a social guest could never stand. We believe this to be the case here.

■■ A social guest is a person who goes onto the property of another for companionship, diversion and enjoyment of hospitality. *Madrazo v. Michaels*, 1 Ill.App.3d 583, 274 N.E.2d 635. All of the evidence admitted shows that plaintiff went to Mrs. Crawford's apartment at the invitation of her daughter, and with the approval of Mrs. Crawford, to watch television and eat. The trial court therefore properly concluded that the issue of plaintiff's status was one of law rather than fact.

■■ The remaining contention raised relating to plaintiff's status on the premises is that the court erred in refusing to admit into evidence an offer of proof consisting of the testimony of Aurora Police Officer Robert Johnson. In relevant part Johnson testified that the Police Department records showed that on the day of the explosion plaintiff's address was listed as 424 Clark Street, the address of the building which was blown up. Pearce argues that this fact is probative evidence that plaintiff was a "secret illegal occupant" of Mrs. Crawford's apartment at the relevant time. Johnson did not explain where this information came from. The evidence at trial shows that plaintiff was rendered unconscious by the explosion and did not regain consciousness until the next day in the hospital. Furthermore, defense counsel were permitted to cross-examine plaintiff as to his place of residence at the time of the explosion, and he explicitly stated that he was residing with a friend on New York Street in Aurora. The cited portion of the offer of proof had little if any probative value as to plaintiff's status in the apartment. If it was error to prohibit Johnson from testifying as to this fact, it was not prejudicial error, especially in light of the fact that counsel for Pearce was afforded ample opportunity to prove his theory that plaintiff was a "secret illegal occupant" of Mrs. Crawford's apartment.

■■ Pearce's fourth contention is that the court erred in excluding evidence relating to plaintiff's employment record, other injuries he sustained after the explosion, his failure to file Federal income tax returns, the fact that he had sexual intercourse with Eileen Crandall in the apartment on the night of the explosion and his "habitual intoxication,"

He first argues that these alleged facts were relevant to the issue of damages.[3] Pearce does not, however, urge that the damage award was excessive. Therefore, this contention is disposed of by those cases which hold that the admission or exclusion of evidence, even if relevant to the issue of damages, is not prejudicial error where the issue of the excessiveness of the size of the verdict is not raised. *Slovinsky v. Beasley*, 316 Ill.App. 273, 45 N.E.2d 42; *Aledo Terminal Ry. Co. v. Butler*, 246 Ill. 406, 92 N.E. 909; see also *Raines v. N.Y. Central R.R. Co.*, 51 Ill.2d 428, 283 N.E.2d 230.

■■■■ Pearce then argues that the cited evidence (except for the "other injuries he sustained") should have been admitted for impeachment purposes, *i.e.*, they allegedly cast an aspersion on plaintiff's character and therefore his credibility. It is well established that attacks on a witness' character for impeachment purposes are limited to those relating to his general reputation for truth and veracity in the community. Impeachment which tends to impung the witness' general moral character is impermissible. (*Schoolfield v. Witkowski*, 54 Ill.App.2d 111, 203 N.E.2d 460; *Elliot v. Brown*, 349 Ill.App. 428, 111 N.E.2d 169; Gard, Illinois Evidence Manual, Rule 492, and comments thereto; McCormick, Law of Evidence (1954 ed.), p. 95.) Similarly, questions relating to specific prior acts unrelated to a material issue are prohibited. *Elliot* at 434, 435; *Rose v. B. L. Cartage Co.*, 110 Ill.App.2d 260, 277, 249 N.E.2d 199.

■■■■ Pearce's next contention is that the court erred in denying his motion for a new trial based on newly discovered evidence. The granting or denying of such a motion is within the sound discretion of the trial court, and if it appears that the evidence could have been presented at trial had the moving party used due diligence, the motion is properly denied. (*Pritchett v. Steinker Trucking Co., Inc.*, 40 Ill.2d 510, 240 N.E.2d 684.) In the instant case the newly discovered evidence consisted of the testimony of Charles Kolkay who allegedly would testify that he saw the gas hot water heater prior to the explosion and that it had a "T and P" valve on it which did not have a manual cleaning device. Defendant Pearce admitted in his deposition that Kolkay worked for him prior to the explosion in the building in question. He was not an unknown witness as Pearce claims. The sworn affidavit of Pearce's attorney attached to the motion makes only the conclusory allegation that Pearce was unaware of this witness "notwithstanding [his] diligence."

---

[3] We note that plaintiff never asked for damages due to lost wages or loss of future earnings capacity. Plaintiff removed these issues from the case prior to the trial.

Under the foregoing circumstances the trial court properly denied the motion.

■■ Pearce's final contention raised in his capacity as defendant is that the court erred in instructing the jury that as a matter of law plaintiff was entitled to recover from one or more of the defendants. He urges that the court's action in "denying" plaintiff's motions for directed verdicts against each of the defendants (except for Northern Illinois Gas) at the close of all the evidence was logically inconsistent with the subsequent instruction submitted to the jury that plaintiff was entitled to recovery as a matter of law. We agree with Pearce that had the court "denied" all of plaintiff's motion for a directed verdict, the subsequent instruction would have been logically inconsistent with such action. However, the record shows that the court did not deny plaintiff's motions but *reserved* ruling on them until after the jury returned its verdicts. This alleviates the logical inconsistency stressed by Pearce. Pearce has cited no authority in support of this alleged error, and we note only that such an instruction or similar action by the trial court has been approved on prior occasions. See *Krump v. Highlander Ice Cream Co.*, 30 Ill.App.2d 103, 173 N.E.2d 822; *Thomas v. Cagwin*, 43 Ill.App.2d 336, 193 N.E.2d 233; *Garrett v. S. N. Nielsen Co.*, 49 Ill.App.2d 422, 200 N.E.2d 81.

■■ In Pearce's capacity as third party plaintiff he first contends that the court erred in failing to submit to the jury his theories of breach of express warranty as to Sears and breach of implied warranty as to A. O. Smith. This contention is contradicted by the record. These issues were submitted to the jury, and verdicts were returned against Pearce as to each of them. The court did refuse Pearce's tendered instruction covering his theory of active-passive negligence as to Sears and A. O. Smith. Since the propriety of this ruling is not raised on appeal, any error regarding it is deemed waived. *People ex rel. Nelson v. Olympic Corp.*, 405 Ill. 440, 91 N.E.2d 597; see also *Pugh v. Bershad*, 133 Ill.App.2d 174, 272 N.E.2d 745.

■■ Pearce's other contention is that the court erred in directing a verdict in favor of Northern Illinois Gas on the third party claim based on active-passive negligence. We concede that it was inconsistent for the court to have directed a verdict in favor of Northern Illinois Gas and against Pearce on the third party claim while allowing plaintiff Fugate's case (based on negligence) against Northern Illinois Gas to have gone to the jury. The record gives no indication as to the court's reasoning for taking this action. However, the jury did find Northern Illinois Gas not guilty in plaintiff Fugate's action. In reaching their verdict, the jury

concluded that Northern Illinois Gas was not negligent in (a) failing to make a complete and adequate inspection of the water heater after it was installed, (b) failing to make a complete and adequate inspection when servicing the water heater subsequent to installation, (c) in failing to observe the absence of a "T and P" valve on the unit and (d) other findings which were also dispositive of any theory of recovery third party plaintiff Pearce had as to Northern Illinois Gas. We therefore believe that the error does not justify remandment of this cause for a new trial on the third party complaint against Northern Illinois Gas.

■■■■ Finally, we address the contentions raised by plaintiff Fugate in his cross appeal. He first contends that the court erred in failing to direct a verdict as to liability at the close of all the evidence in his favor and against A. O. Smith and Sears. Alternatively, he argues that the jury's verdicts in favor of A. O. Smith and Sears were against the manifest weight of the evidence. The theory of recovery as to these two defendants was strict tort liability. (*Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182.) *Suvada* requires a plaintiff to prove that (1) his injury resulted from a condition of a product, (2) which was unreasonably dangerous and (3) which existed at the time the product left the manufacturer's (or retailer's) control. We would agree with plaintiff that the undisputed testimony in this case was to the effect that manufacting this gas hot water heater without a "T and P" valve produced a condition in the product that was unreasonably dangerous and which existed at the time it left both A. O. Smith's and Sears' hands. However, these facts alone do not impose liability on either party absent a showing that the defect in the product caused the injury. Under *Pedrick* we must view the evidence in its aspect most favorable to the defendants. Pearce admitted in his deposition that a "T and P" valve had been placed on the heater prior to the time of the explosion. This would tend to all but destroy plaintiff's case against A. O. Smith and Sears. The only other viable theory of recovery, accepting the fact that a "T and P" valve was on the unit, would be that there was a failure to give adequate warning that the "T and P" valve had to be cleaned periodically to insure safe operation of the heater. (See *Williams v. Brown Mfg. Co., Inc.*, 93 Ill.App.2d 334, 359-362, 236 N.E.2d 125, *rev'd on other grounds*, 45 Ill.2d 418, 261 N.E.2d 305; Frumer-Friedman, Products Liability, sec. 8.05.) However, this theory was not urged in plaintiff's final amended complaint which was submitted to the jury as part of an instruction. The theory thus cannot be urged as a ground for reversal on review. (See *Broberg v. Mann*, 66 Ill.App.2d 134, 213 N.E.2d 89.) The verdicts in favor of A. O. Smith and Sears must therefore stand.

■■ The remaining contention in plaintiff's cross appeal is that the

jury verdict in favor of Northern Illinois Gas was against the manifest weight of the evidence. Related here is the claim that the court's action in directing a verdict in favor of Northern Illinois Gas and against third party plaintiff-Pearce prejudiced plaintiff's case against Northern Illinois Gas. Plaintiff's theory as to Northern Illinois Gas was that the company made several service calls to the premises to relight the pilot light on the heater,[4] that the company's practice is to inspect an appliance when servicing it, and that one who voluntarily undertakes to do a gratuitous act is under a duty to do such with ordinary care. (See *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769; *Glanzer v. Shepherd*, 233 N.Y. 236, 135 N.E. 275 (Cardozo, J.).) However, the entire argument is predicated upon the assumption that there was no "T and P" valve on the unit at the time of the inspection(s). As noted earlier, the jury could properly have concluded that a "T and P" valve was on the unit and therefore Northern Illinois Gas was not negligent in failing to warn Pearce of the existence of a potential danger.

■■ We further believe that the trial court's action in directing a verdict in favor of Northern Illinois Gas and against third party plaintiff Pearce was not so prejudicial to plaintiff Fugate's case against Northern Illinois Gas as to require reversal. The jury was instructed to follow the instructions given by the court and one of these instructions set forth in full plaintiff Fugate's theory of recovery as to Northern Illinois Gas. At no time during final arguments was an aspersion cast upon plaintiff's case by the fact that Northern Illinois Gas was no longer a defendant in the third party action. It is apparent that the jury simply found that Northern Illinois Gas was not guilty of negligence and the judgment in its favor is upheld.

The judgments are affirmed.

Affirmed.

LORENZ, J., concurs.

Mr. JUSTICE ENGLISH dissenting:

My disagreement with the majority has to do with the serious error and significance which I attach to the trial court's having told the jury that as a matter of law plaintiff was entitled to recover from one or more of the defendants. I think the majority has not really dealt with this question, as it seems to me to be of no consequence whether the court denied or reserved its ruling on plaintiff's motion for directed verdict, as

---

[4] Frank Willis, an employee of Northern Illinois Gas, admitted that the company's records showed that at least one service call was made to relight the pilot light.

that fact does not, in my opinion, alleviate any logical inconsistency (as stated by the majority), but, rather, aggravates it. If logic were to be determinative, then it would have required the entry of judgments against Sears and A. O. Smith notwithstanding the verdicts in their favor, since the requirements for a directed verdict and judgment notwithstanding the verdict are identical.

The instruction language which I conceive to have been erroneously given to the jury does not appear in a self-contained instruction, but consists of two prefatory sentences in a rather long instruction setting forth the bases on which the jury was to determine the amount of plaintiff's damages. While I do not consider it error to have covered liability and damages in the same instruction, it does highlight psychologically, at least, the relative importance of the damages issue. The two sentences which I question, read as follows:

> "As a matter of law, the plaintiff is entitled to recover in this case. It is for you to decide whether one defendant, more than one defendant, or all of the defendants are responsible to the plaintiff."

No form permitting a finding of not guilty as to all defendants was submitted to the jury.

When the court directed the jury that, as a matter of law, it could properly decide that all defendants were guilty, then such an instruction must necessarily meet the *Pedrick* test as to all defendants. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) That well-known and oft-cited rule is that verdicts sought to be directed *and* judgments entered notwithstanding contrary verdicts "*only* in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so *overwhelmingly* favors movant that no contrary verdict based on that evidence could ever stand." (Emphasis added.) 37 Ill.2d at 510.

I have reviewed the very lengthy record, and I believe it can be seen from the majority opinion's statement thereof that plaintiff's evidence relating to the five defendants may have been sufficient to raise a fact question as to the liability of each—but just barely, and, if so, then plaintiff was entitled to have the question of liability submitted for the jury's determination. However, in my opinion, the evidence, "viewed in its aspect most favorable" to defendants, was far, far removed from being of that "overwhelming" character required by *Pedrick* as the "only" circumstance under which a verdict may properly be directed on the issue of liability.

Concerning plaintiff's claim against Smith and Sears, I agree with my

colleagues' conclusion (curious, under the circumstances), that the evidence presented a jury question as to these two defendants, and that there was insufficient evidentiary basis for the court to have directed a verdict against them on the issue of liability (albeit for somewhat different reasons which need not be mentioned in view of our agreement as to the end issue). In their finding on this point, however, the majority overlook, and plaintiff in his cross-appeal ignores, the fact that the court had already ruled (in the instruction quoted above), that the evidence did satisfy the *Pedrick* rule as to Smith and Sears, as a verdict had, in effect, been directed against all defendants as to liability.

Concerning plaintiff's claim against Northern Illinois Gas, much the same can be said, although here, in a lower key, plaintiff argues, and the majority deny, the proposition that the jury's not guilty verdict was against the manifest weight of the evidence. This point, too, is considered in a vacuum which excludes consideration of the quoted jury instruction, and is inconsistent therewith. I agree with the majority's result, however.

Concerning plaintiff's claim against Pearce, much turns, I think, on the question as to whether or not Pearce had installed or negligently failed to install and maintain a "T" and "P" valve on the heater, there being no doubt about the absence of such a valve when delivered by Smith and Sears. As recited in the majority opinion, Pearce testified that he had called Northern Illinois Gas to inspect the installation of the heater; that he did not know whether there was a "T" and "P" relief valve on the heater; that he didn't know what one was; and that "he assumed all of the necessary safety precautions were on the heater when it was sold to him." Edward McLean, an industrial engineer, testified for plaintiff that he was called "to visit the remains of a premises at 424 Clark Street" two days after the occurrence; that there had been "a missile type ejection of the tank from and through the building"; and that he had not found a "T" and "P" valve during his investigation. While Smith and Sears installation manuals directed the addition of a "T" and "P" valve, plaintiff's consulting engineer Salzenstein testified that "good and accepted engineering practices" would require that a "T" and "P" valve be incorporated as an integral part of the heater itself by the manufacturer and not left to whoever might make the installation. He also said that the instructions delivered by Sears with their heaters, directing periodic removal of sediment from the bottom of the tank (which was done by Pearce), were incomplete for failure to mention also a periodic opening of the "T" and "P" valve.

This is the sum total of the evidence against Pearce as to any culpability on his part in regard to a "T" and "P" valve. It hardly amounts to

"overwhelming" proof either way, and, obviously, if there were no such valve installed, the charge of its negligent maintenance would become hypothetical and of no importance to the case.

I think there is some misunderstanding as to the proper use to which Pearce's discovery deposition may have been utilized in different phases of this case. In discussing plaintiff's case against Pearce, the court's opinion refers to Pearce's having testified on discovery deposition that there was a "T" and "P" valve on the heater unit and that he had inspected it periodically, whereas, as we have seen, he testified at trial that he didn't know whether there was such a valve, nor did he know what one was. The majority opinion appears to have given considerable weight to this deposition testimony as substantive evidence. To the extent that I have read this correctly, the court has, in effect, admitted the deposition into evidence, contrary to Supreme Court Rule 212(a), which, in the context of plaintiff's claim against witness Pearce, provides that a discovery deposition may be used for impeachment purposes only. (Ill. Rev. Stat. 1961, ch. 110A, par. 212(a).) It is true that under the rule, Pearce's discovery testimony would have been admissible in plaintiff's case against him at trial if it amounted to an admission, but under plaintiff's primary argument that there had been no "T" and "P" valve, the deposition testimony could hardly be treated as an admission. On the other hand, I would agree that it amounted to an admissible admission in Pearce's third party complaint against Smith and Sears.

Ironically, the court's review of the point set forth in the paragraph next above was developed in connection with the argument in Pearce's brief that the court should have directed the jury to find him not guilty of negligence as a matter of law. The majority opinion concludes, quite correctly, I would agree (though, again, for a somewhat different reason), that the point lacks merit, citing *Pedrick*. The result, then, is a stand-off. Under *Pedrick*, neither plaintiff nor Pearce was entitled to a directed verdict.

Returning to the instruction which did direct a verdict against one or more or all of the defendants, I have attempted to point out that it was inappropriate as to any defendant, but that by the oblique form in which it was stated, it afforded the jury the opportunity to consider, and reasonably so, that it had received the court's prior imprimatur as a matter of law on any guilty verdict it might return. Thus, if the jury had returned a not guilty verdict as to Pearce and guilty verdicts as to all the other defendants, the court would have found itself committed in advance to the entry of judgments on such guilty verdicts. This is an example of one of the reasons why I truly believe that the instruction is tantamount to a directed verdict against all defendants, and, con-

sistent with its directives, the court should then have entered judgment notwithstanding the verdict as to Pearce.

To bolster their conclusion that the instruction which I question was properly given, the majority cite three cases, none of which furnishes the needed support. They are: *Krump v. Highlander Ice Cream Co.*, 30 Ill.App.2d 103, 173 N.E.2d 822; *Thomas v. Cagwin*, 43 Ill.App.2d 336, 193 N.E.2d 233; and *Garrett v. S. N. Nielsen Co.*, 49 Ill.App.2d 422, 200 N.E.2d 81.

In *Krump*, plaintiff sued for damages to his building which resulted when two automobiles collided and one then struck the building. The trial court directed a verdict in favor of defendants at the close of plaintiff's evidence; it therefore gave no instruction similar to the one in the instant case. The Appellate Court first recognized that "the mere happening of an accident, together with the exercise of ordinary care by plaintiff, does not raise any presumption of negligence on the part of the defendants," citing (among countless other cases which would have been available declaring this principle), the case of *Brown v. Boyles*, 27 Ill.App.2d 114, 169 N.E.2d 273, which involved a collision between two vehicles and affirmed a judgment which found all parties not guilty. This proposition I can understand. (For examples of later vehicle collision cases standing for the same principle, see *Russell v. Rowe*, 82 Ill.App.2d 445, 226 N.E.2d 652; *Nilsson v. Checker Taxi Co.*, 4 Ill.App.3d 718, 281 N.E.2d 721, and *Malone v. Chicago Transit Authority*, 76 Ill. App.2d 451, 222 N.E.2d 93, both of the last two cases involving defendants which as common carriers owed their plaintiffs the highest degree of care.) The *Krump* court, nevertheless, then went on to hold that the collision of the two automobiles *did* constitute a prima facie case of negligence on the part of one or both of the drivers, prompting reversal and remand for a new trial which would require defendants to go forward with their proof which might establish negligence on the part of one or both defendants. This proposition I cannot understand.

In the *Thomas* case, there was a head-on collision between the defendants' two vehicles, and it was conceded by defense counsel that one or the other of the defendants had been negligent in driving on the wrong side of the road.

In the *Garrett* opinion (written by the same judge who wrote the *Krump* opinion), a judgment was affirmed based on a verdict finding one of two defendants (the general contractor) guilty and the other (a subcontractor) not guilty in a construction case involving some shoring of a building which had given way. The only issue on appeal was whether or not the appellant was entitled to a verdict directed in its favor. The defense of each defendant had been that the other was re-

sponsible. There was no instruction similar to the one in the instant case, but the court had employed the simple expedient of not giving the jury a form of verdict under which both defendants could have been found guilty. The appellate court approved this procedure, holding that there was a jury question as to both defendants. There was no discussion of the fact that the omission of a verdict form finding both defendants not guilty had the obvious effect of directing a verdict, as in the instant case. Nor was there any discussion of the fact that the court had defaulted in part of its obligation to the jury by leaving it completely uninstructed on this phase of the case. I consider this even less defensible, although the litigation grapevine has it that this procedure is being increasingly followed.

In conclusion, it is my belief that the instruction of which I complain had the definite, albeit somewhat devious, effect of telling the jury that *each and every* defendant was guilty as a matter of law; that when the jury found two of the five defendants guilty, the instruction compelled that result, but at the same time it could just as well have compelled a guilty verdict as to all five; that this being true, then on the strength of the court's conclusion in giving the instruction, legal consistency would have dictated that it enter a judgment notwithstanding the verdict as to the other three defendants, which it had no apparent intention of doing and did not do. Assuming, as I do not, that the court in this case could properly have assessed the evidence as "overwhelming" against any defendant, then, in my opinion, the scattershot method of instructing the jury represented a failure of the court to meet its obligation to instruct the jury fully, and particularly to direct a verdict on the basis of the "overwhelming" weight of the evidence, or lack of it, as to each defendant separately—there being no recourse under the *Pedrick* rule to leave the jury partially uninstructed by lumping the defendants together collectively, unless the same result were directed as to all. My own conclusion is that the *Pedrick* rule did not permit the directing of a verdict against *any* defendant in this case, but even if it did, the error in the giving of the instruction in question requires a new trial.

If I am wrong in this conclusion, so be it, but if the instruction is as unfair and legally unsound as I deem it to be, then it would be my hope that the Supreme Court might pass on the question before it becomes solidified into our trial practice through widespread use in the absence of final authoritative direction one way or the other.